237 So.2d 8 (1970)
Anna SAFER and Josephine Safer, As Beneficiaries and Trustees of the Estate of Harry Safer, and Benjamin Safer, As Trustee of the Estate of Harry Safer, Appellants,
v.
CITY OF JACKSONVILLE, a Municipal Corporation, Appellee.
No. L-312.
District Court of Appeal of Florida, First District.
March 17, 1970.
Rehearing Denied April 10, 1970.
*9 Evans & Stewart, Jacksonville, for appellants.
William L. Durden, David U. Tumin, William Lee Allen, Jacksonville, for appellee.
WIGGINTON, Judge.
Plaintiffs have appealed a final judgment denying in all respects their prayer *10 for relief and dismissing with prejudice their complaint seeking a declaration of their rights under a housing ordinance, and an injunction.
This is the second appearance of this case in this court. On the first appearance we reversed a final judgment dismissing plaintiffs' complaint with prejudice for failure to state a cause of action, and remanded the cause for further proceedings.[1]
From the stipulation of the parties, and the evidence adduced at the trial, the following facts appear without material dispute.
During his lifetime Harry Safer accumulated a modest estate consisting of eight dwellings located in a low income area of Jacksonville, each containing rental units occupied by tenants. Harry Safer executed a will creating a trust, the corpus of which was composed primarily of the rental units owned by him, directing that the property be maintained in good repair and the income derived therefrom be paid to his widow and two maiden daughters. After his death his trustee managed the property in the manner directed by the will and was able to derive enough income above expenses to care for the basic needs of the widow until the time of her death, and for the basic needs of the two elderly maiden daughters who are entirely dependent upon the income of the trust for their livelihood. The total value of the entire trust estate was shown to be approximately $40,000. Each of the rental units contains a private indoor bath with tub or shower, flush-type toilet, kitchen sink, and all are wired for electricity. The fireplaces, chimneys and flues located in the units are maintained in a good state of repair. Approximately one-half of the tenants or their families have occupied the units rented by them for more than thirty years. In accordance with the directions contained in the will, the trustee followed the practice of painting each house with two coats of paint every four or five years.
Under the authority of its Housing Code, the appellee City of Jacksonville caused an inspection to be made of plaintiffs' dwelling units which resulted in a report charging seventy violations of the Code. Plaintiffs were directed to either cure the violations as found to exist or in default thereof the tenants would be required to vacate the premises and each dwelling unit placarded with the warning that it is unfit for human habitation. The cost of curing all of the alleged violations specified by the city inspector was found to be approximately $20,000, or one-half the total value of the entire property. Being without funds to defray the cost of compliance with the City's directive, plaintiffs appealed to the Board of Adjustment and otherwise exhausted the administrative remedies afforded under the Housing Code, all to no avail.
Being unable to secure administratively the relief to which they deemed themselves entitled, appellants brought this action for declaratory relief challenging the validity of the Housing Code enacted as Ordinance FF-415 of the City of Jacksonville, and Chapter 67-1576, Laws of Florida, Acts of 1967, being the enabling act on which the validity of the ordinance depends. In addition, plaintiffs sought an injunction to restrain the City from interfering with their contractual relations with their tenants and from ordering the dwellings to be vacated and posted as unfit for human habitation.
After the pleadings in the case were settled, a pretrial order was rendered by the court adjudging that the only factual issue in dispute was whether any of the rental units owned by the plaintiffs had any defect or deficiency therein or in any part thereof which would materially jeopardize or adversely affect the health or safety of any tenant. The order further adjudged that the legal issues to be determined were as follows:
1. The constitutional validity of the enabling act in whole or in part.

*11 2. Whether the defendant, in enacting the Housing Code, exceeded the authority given it by the Florida legislature in the enabling act.
3. Whether the defendant's demands on the plaintiffs exceeded the scope of the Housing Act.
After evidence by the parties was adduced at the trial, the jury was furnished with a special verdict containing 140 interrogatories relating to the seventy alleged violations of the Code charged by the inspector to have occurred and the defects found to exist in the rental units. The interrogatories required the jury to state whether they found the alleged defects to exist, and, if so, whether such defects in any material manner jeopardized or adversely affected the health or safety of any tenant. The jury rendered its verdict finding that fifty of the seventy alleged defects reported by the city inspector either did not exist, or if they did, they in no manner jeopardized or adversely affected the health or safety of any tenant. Of the twenty defects found to exist, the jury found that nineteen of these had been cured prior to the trial. The only defect found not to have been cured was a handrail leading from the first to the second floor in one of the dwelling units which plaintiffs immediately had installed at a cost of $28.50 and proof thereof filed with the court. The entire cost incurred by the plaintiffs in curing the twenty material defects reported by the city inspector amounted to less than $1,000 of the $20,000 it would have cost to have cured the remaining fifty defects reported by the City which the jury found either did not exist or were not material.
By the final judgment appealed herein the trial court found that Chapter 67-1576, Laws of Florida, the enabling act adopted by the Legislature, is constitutional and valid; that the defendant City did not exceed the authority granted it by the enabling act in its enactment of the Housing Code, Ordinance FF-415; and, that the defendant's demands on the plaintiffs did not exceed the scope of the Housing Code. Based upon such findings the court denied plaintiffs' prayer for relief in all respects; held the Housing Code to be constitutional and valid against all attacks; and thereupon dismissed plaintiffs' complaint with prejudice.
That provision of the final judgment which found the enabling act, Chapter 67-1576, Laws of Florida, Acts of 1967, to be constitutional and valid has not been questioned on this appeal and therefore no further comment will be made concerning this provision of the final judgment.
Appellants vigorously challenge that part of the judgment which holds the Housing Code, Ordinance FF-415, to be constitutional and valid in all respects. The two principal provisions of the Code toward which appellants direct their attack are those granting to the Board of Adjustment the right to grant relief against the strict or literal enforcement of the Code under circumstances where such enforcement would cause an undue hardship, to manifest injustice, and would be contrary to the spirit and purpose of the Code or public interest. The sections of the Code so challenged are as follows:
"Section 105.1  Hardships. `Where the literal application of the requirements of this Code would appear to cause undue hardship on an owner or tenant or when it is claimed that the true intent and meaning of this Code or any of the regulations therein have been misconstrued or wrongly interpreted, the owner of such building or structure, or his duly authorized agent, may appeal from the decision of the Supervisor of Building to the Housing Board of Adjustments and Appeals,' as set forth in Section 107  Appeals."
"Section 108.1  Variations and modifications.
(a) The Housing Board of Adjustments and Appeals, when so appealed to *12 and after a hearing, may vary the application of any provision of this Code to any particular case when, in its opinion, the enforcement thereof would do manifest injustice, and would be contrary to the spirit and purpose of this Code or public interest, or when, in its opinion the interpretation of the Supervisor of Building should be modified or reversed."
It is appellants' position that the foregoing provisions of the Code constitute an unlawful delegation of legislative power to an administrative board because they contain no standard by which "undue hardship" or "manifest injustice" may be measured in order to determine whether an owner or tenant is entitled to the relief provided for in the Code. Appellants argue that because of this deficiency the Housing Board of Adjustments and Appeals may arbitrarily and capriciously grant or withhold relief against literal application of the Housing Code according to whim or caprice under the guise of exercising the discretionary power vested in it by the Code. We are unable to agree that such is the legal effect of the provisions here assaulted, and are of the view the terms "undue hardship" and "manifest injustice" are susceptible of legal interpretation based upon the facts of a given case.
The above-quoted sections of the Code are analogous to the municipal zoning statutes of our state which vest in the zoning board of adjustment the power to authorize variances from the terms of a zoning ordinance where a literal enforcement of its provisions will result in unnecessary hardship or manifest injustice.[2]
Zoning ordinances, like housing codes, are authorized and enforceable under the police power of the state to preserve, protect, and promote the health, safety, welfare, and morals of our citizens. The validity of a city zoning ordinance identical in all material respects to the zoning statute above mentioned was challenged on constitutional grounds in the case of Tau Alpha Holding Corporation v. Board of Adjustments, etc.[3] It was contended that the ordinance was void because it amounted to an unconstitutional delegation of legislative authority. Such contention was rejected by the Supreme Court which held the ordinance to be valid under the majority view prevailing in our country. On the authority of the Tau Alpha Holding Corporation decision, the contention of appellants in this regard must be rejected.
In addition to the above, appellants challenge those portions of Section 302 of the Code which require each dwelling unit to contain a kitchen sink, lavatory, tub or shower, to which shall be connected an adequate supply of potable hot water. They also challenge that portion of Section 303.4 which requires that each habitable room contain at least two (2) wall-type convenience electrical outlets or one (1) such convenience outlet and one ceiling type electrical fixture. Although each of the dwelling units in question contains a kitchen sink, tub or shower, only a portion of them contain a lavatory and none of them contain hot water heaters furnishing a potable supply of hot water to the sink and tub or shower. A number of the rooms do not contain the number of convenience electrical outlets required by the Code although all contain at least one electrical outlet or fixture. Appellants contend that the requirements of a sink, convenience electrical outlets, and supply of hot water have no *13 necessary relationship to the health or safety of the tenants occupying the rental units; are not authorized under the enabling act which gives validity to the Code, and if complied with would require the expenditure of a prohibitive sum of money disproportionate to the value of the dwellings and cause an increase in the rents which the tenants cannot afford and would not pay.
The enabling act upon which the validity of the Housing Code depends provides:
"Section 2. The City of Jacksonville, in order to protect the health, safety and welfare of the residents of the city, by ordinance may provide * * * reasonable minimum standards for plumbing systems and equipment, * * * electrical systems, adequate vents or flues for heating * * * and may prescribe the responsibility of owners, operators and occupants with respect thereto. * * *"
The primary question posed for consideration is whether the requirements that every rental unit contain a lavatory, convenience electrical outlets in each room, and a continuous supply of potable hot water are reasonably required in order to protect the health, safety, or welfare of the tenants occupying these units. To hold in the affirmative would do violence to the history of our country, in the early years of which hearty citizens were reared and grew to maturity under living conditions which included bathing in a bowl supplied by a water pitcher placed upon a washstand in the bedroom, and under which all hot water used by the family was heated in a kettle, pot, or tub on the kitchen stove. Research fails to reveal any substantial number of instances in which living under these conditions adversely affected the health, safety or morals of our forebears, or indeed many of the older generation living today. The paternalistic trend in government is gradually forcing a surrender of the living conditions commonplace in the "good old days" for more modern concepts of living which frequently are influenced more by aesthetic considerations than those relating to health, safety, or welfare. To require the installation of lavatories, hot water heaters and convenient electrical outlets in all of the low rent dwelling units owned by appellants would not only be unreasonable but constitute a confiscation of appellants' property without compensation contrary to basic constitutional rights. The cost of compliance bears no reasonable relationship to the objects to be attained.
In the case of Dente v. City of Mount Vernon[4] a housing code adopted by the City of Mount Vernon required the installation of a bathtub or shower and a bathroom wash basin with adequate hot and cold water for the bathtub or shower in each existing dwelling unit. The plaintiff challenged the validity of the ordinance on constitutional grounds and the proof established that the cost of making the renovations required by the code in the eleven three-room apartments owned by plaintiff would amount to $11,000. In holding the ordinance unconstitutional as being unreasonable and oppressive when applied to plaintiff's property, the court said:
"While the enactment of the subject ordinance is within the field of legislative power of the City of Mount Vernon under the Constitution and statutes, the court notes that municipalities are not permitted to abuse the police power and that improvements required by ordinances enacted through the exercise of the police power must be reasonable, proper and fair when considered with references to the object to be attained. * * *"
The court predicated its opinion on two prior decisions authored by Mr. Justice *14 Holmes. In Block v. Hirsh[5] the Supreme Court of the United States stated:
"[A]s there comes a point at which the police power ceases and leaves only that of eminent domain, it may be conceded that regulations of the present sort pressed to a certain height might amount to a taking without due process of law."
In Rideout v. Knox[6] the Supreme Court of Massachusetts stated:
"It may be said that the difference is only one of degree. Most differences are, when nicely analyzed. At any rate, difference of degree is one of the distinctions by which the right of the legislature to exercise the police power is determined. Some small limitations of previously existing rights incident to property may be imposed for the sake of preventing a manifest evil; larger ones could not be, except by the exercise of the right of eminent domain."
Sections 305.1 and 305.3 of the Code provide that every dwelling unit shall have provisions for heat, which provisions, in the absence of a central or electric heating system, shall consist of sufficient fireplaces, chimneys, flues or gas vents whereby heating appliances may be connected so as to furnish the minimum temperature therein specified. No question is raised as to the sufficiency of the fireplaces, chimneys and flues contained in plaintiffs' rental units. The evidence reveals that plaintiff landlords do not furnish heating appliances to the tenants, which appliances are furnished by the tenants themselves. The violation charged by the city inspector against plaintiffs is that they have failed to furnish each dwelling unit with adequate heating appliances for use of the tenants, a requirement which is not supported by the provisions of the Code and is beyond the lawful authority of the City to demand.
The Code requires that every occupant of a dwelling unit dispose of his rubbish in a sanitary manner, and imposes upon the owner or occupant the responsibility of keeping the premises clean and free of rubbish, trash, garbage, etc. The City charged plaintiffs with violating the Code by failing to keep the premises on which the rental units are located in a clean and sanitary condition even though all units are occupied by tenants whose rubbish, trash, or garbage forms the basis of the complaint. It is our construction of the Code that its purpose and intent is to impose the responsibility for keeping premises clean and sanitary on the occupant of the premises whether they are occupied by an owner or tenant. If the premises are not occupied, then the responsibility falls on the owner. The demands made by the City of the plaintiff landlords under the facts of this case both as to heating appliances and maintenance of the premises in a clean and sanitary manner are unwarranted and without legal support.
As previously stated, the sole legal justification for a municipal housing code is that it is necessary to protect the health, welfare, safety and morals of the public. The City stipulated that the question of whether the alleged violations charged against plaintiffs in any material manner jeopardized or adversely affected the health or safety of any tenant should be submitted to and determined by the jury. The jury's verdict resolved this question in the negative as to fifty of the seventy alleged defects, and found that the remaining alleged defects with a single exception had been cured prior to trial. Having so stipulated, the City is bound by the jury's verdict and can no longer contend that the defects found by its inspector to have existed in plaintiffs' property constitute violations of the Code. Despite this, the City has taken heart in the action of the trial judge denying plaintiffs all relief *15 and dismissing the complaint, and have signified an intention to require plaintiffs' tenants to vacate the premises and to placard the buildings as unfit for human habitation unless the plaintiffs forthwith proceed to cure the defects which the jury's verdict found either do not exist or do not materially jeopardize or adversely affect the health or safety of the tenants. Under the circumstances it must be held that the trial court erred in denying plaintiffs the injunctive relief they prayed. The judgment appealed is accordingly reversed and the cause remanded with directions that a judgment be entered in accordance with the views expressed herein and that an injunction be granted restraining the City from interfering with plaintiffs' contractual rights with their tenants or from taking any punitive or penalizing action against plaintiffs on account of any of the alleged defects contained in its inspector's report which was submitted to and passed upon by the jury in this case.
Reversed.
CARROLL, DONALD K., Acting C.J., and RAWLS, J., concur.
NOTES
[1] Safer v. City of Jacksonville (Fla.App. 1968), 212 So.2d 785.
[2] F.S. § 176.14, F.S.A.

"Powers of board of adjustment. The board of adjustment shall have the following powers:
* * * * *
"(3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so justice done."
[3] Tau Alpha Holding Corporation v. Board of Adjustments of City of Gainesville, 126 Fla. 858, 171 So. 819.
[4] Dente v. City of Mount Vernon (1966), 50 Misc.2d 983, 272 N.Y.S.2d 65.
[5] Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865.
[6] Rideout v. Knox, 148 Mass. 368, 19 N.E. 390, 2 L.R.A. 81.