SMITH, Judge
(dissenting) :
In my view the exception to the screen door requirement which Jacksonville made for centrally air conditioned and heated units is based on a difference which the City’s legislative authority could make without offending the equal protection clause of the Constitution. Neither can I perceive a constitutional objection to Jacksonville requiring the owner of multi-family dwelling units to deal with rodents and insects which know no subdivisions of his building. Nor do I consider that the City’s use of the questioned forms for notifying *74 landowners of claimed code violations offends due process standards.
The City’s evidence showed abundantly that screen doors promote the health of dwelling occupants. That is conceded by the majority. It was demonstrated not only by the imported experts referred to in the majority opinion, but also by a Jacksonville physician who has been City Health Inspector for more than 20 years. Physicians obtained a screening ordinance in Jacksonville 60 years ago, he testified, and the incidence of typhoid fever dropped by half. The validity if not the desirability of a general screening requirement being conceded, it is not beyond reason that Jacksonville exempts dwellings which are centrally heated and air conditioned. Is there "no conceivably just basis” for a classification excepting dwellings whose doors are less likely to be left standing open because of automatically controlled temperature and humidity inside? Fronton, Inc. v. Florida State Racing Comm’n, 82 So.2d 520, 523 (Fla.1955). I think not. The legislative authority is at liberty to strike at a public problem in its most obvious form. If the classification of those affected bears some reasonable relation to the legislative purpose, there is no denial of equal protection because the legislation is not extended to its widest possible reach.[1]
On evidence demonstrating beyond question that rodent and insect infestation of multi-unit buildings cannot effectively be controlled on a unit-by-unit basis, I am at a loss to appreciate how the due process clause of the Constitution prevents Jacksonville from placing the burden of that necessary health measure on the owner, whose access extends to all parts of the building. This Court did not hold in Safer v. City of Jacksonville, 237 So.2d 8 (Fla.App. 1st, 1970), as the majority declares, that “such duty can be imposed constitutionally only upon the occupant.” Rather, the court merely stated, quite independently of constitutional questions, that the “purpose and intent” of the code was “to impose the responsibility for keeping premises clean and sanitary on the occupant.” 237 So.2d at 14. The Court’s reference there was to “tenants whose rubbish, trash, or garbage forms the basis of the complaint.” The Safer opinion is no basis for asserting that rodent and insect control cannot constitutionally be required of the owner of multi-unit dwellings.
The majority have also inexplicably stricken, as offending due process considerations, the printed forms on which the City’s inspectors indicated the repairs necessary to bring appellants’ rental buildings into compliance with the code. The majority treats those forms as if they are indictments by which Jacksonville seeks to prosecute appellants for criminal offenses, which plainly they are not, and holds that use of the printed forms offends constitutional standards. On my part, I find notices such as “repair wall surfaces in living room, kitchen, bedroom, bedroom, bath” in a particular unit, repair “lavatory,” repair “toilet,” “check all gas lines and appliances because apartments have gas leaks in the kitchen,” repair “roof”, repair “paint”, and repair “a banister” sufficiently notify appellants wherein their buildings or specified units have been found deficient. The note “foundation piers, repair,” was intended by the inspector to call attention to a *75 condition described in testimony as “defective” or “missing- bricks” or “leaning” piers. A request on the form for “ceiling and wall surface repairs” seems to me to reasonably call attention to conditions described in testimony as separations between the walls and ceilings of 90 percent of the units in appellants’ apartment complex, requiring “some kind of a plaster or compound to seal [the] crack, to restrict the rodents and such, and so forth, from crawling through the walls.” Although the City’s notices could conceivably have been made more explicit, they were adequate to inform a reasonably receptive owner wherein his buildings were found wanting.
On receipt of the notices, appellants neither inquired of the City concerning any uncertain descriptions of the shortcomings listed nor asked their rental agents to do so. The owners nevertheless testified that they were confused and left in doubt by ambiguities in the inspectors’ description of defects. Thus, one of appellants professed to be confused by the inspector’s directive to “check all gas lines and appliances” at specified apartments “because apartments have gas leaks in the kitchen.” “Well,” appellant Butts testified, “it would possibly mean that . . . the stoves or hot water heaters, either they were leaking gas, possibly in the line, or possibly the appliance itself, or I don’t know whether it applies to all — I mean the apartments they have listed here, it’s hard to believe that 20 apartments all have a gas leak in the kitchen. . . .” The attached forms reveal that the gas leaks were found in the kitchens at apartments 8 and 38. Butts also testified, concerning an inspector’s notation to “apply treatment for insect infestation,”
“I don’t know whether you are going to treat them to get them well or get rid of them.”
Similarly, one of the principals of the firm engaged by appellants to “collect rents and manage” some of the apartments testified that he too was confused by the ambiguities of the notice given by the inspector:
“It’s very vague information . . .
“ ‘Door frames repair’ and ‘door, repair.’ Now the doors out there are metal and the frames are metal, so I don’t understand what repairs could be made to that.
“Most of the things are very vague, as to trying to find out exactly what they have in mind. I don’t know.”
The rental agent did not inspect the door frames at the specified address in order to alleviate his confusion, but a contractor witness did look at the door frames and he found:
“There are steel jambs, and the lower part had spread, and, in some cases, disintegrated.
“Q. How much, could you estimate, for instance—
“A. We had several doors where I actually took a pencil and ran in the lower part, not to the top — it would go up to the bolt, probably, and you could almost run a pencil half way up.
“Q. A whole pencil or half pencil ?
“A. No, sir; the full thickness of the pencil.”
In my view, the trial court was at liberty to discount the confusion asserted by appellants as a result of vagueness in the inspection notices. Appellants, whose attitude toward the City’s inspection system was one of undifferentiated hostility, exhibited little interest in identifying the alleged defects.
I do not find any constitutional impediment to the measures enacted by Jacksonville. I would sustain the trial court’s action permitting Jacksonville to require ap *76 pellants to exterminate the rodents and insects in their multi-unit projects, to put screens in the doors as they have in the windows, and to respond to the inspection notices.

. “[T]he legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The Legislature ‘is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.’ If ‘the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.’ ” West Coast Hotel Co. v. Parrish, 300 U.S. 379, 400, 57 S.Ct. 578, 585-86, 81 L.Ed. 703, 713 (1937). See also, as sustaining legislative distinctions based on differences in regulated classes having some substantial relation to the legislative purpose, Hunter v. Flowers, 43 So.2d 435 (Fla.1950); Selby v. Bullock, 287 So.2d 18 (Fla.1973); and Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla.1974).