In re Delores Elaine BROCK, Bankrupt.

**NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION, Plaintiff,**

v.

**Delores Elaine BROCK, Defendant.**

**Bankruptcy No. 78 B 178.**

United States Bankruptcy Court, S. D. New York.

March 27, 1980.

Regan, Goldfarb, Heller, Wetzler & Quinn, New York City, for New York State Higher Ed. Services Corp.

Mirkin, Barre, Saltzstein & Gordon, P.C., Great Neck, N. Y., for defendant.

## DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT

EDWARD J. RYAN, Bankruptcy Judge.

The New York State Higher Education Services Corporation (hereinafter N.Y.S.H.E.S.C.) is seeking to have certain loans made to Delores Brock, the bankrupt herein, determined nondischargeable pursuant to 20 U.S.C. § 1087–3. Section 1087–3 provides, in pertinent part:

"(a) A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five-year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of that five-year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents."

The bankrupt, a single woman without any dependents, received her Bachelor's Degree in June, 1973 and her Master's Degree in June, 1977. She is currently employed as

a Supervisor of Human Resources Specialists for the City of New York, Department of Employment, in the Division of Human Resources Administration.

The bankrupt received a total of $7,000 in guaranteed student loans between the period November, 1971 and October, 1974. Upon disbursement of each loan, the bankrupt executed a promissory note as evidence of her total indebtedness at that time.

Ms. Brock filed a voluntary petition in bankruptcy in January 1978, approximately two and a half months before the first payment was due on her student loans. On May 10, 1978, the plaintiff, N.Y.S.H.E.S.C., instituted this proceeding to determine the dischargeability, pursuant to 20 U.S.C. § 1087–3, of the bankrupt's federally guaranteed loans. The issue tried before this court on November 17, 1978, was whether repayment of the bankrupt's student loans, from future or other income, would constitute an undue hardship upon Ms. Brock, according to 20 U.S.C. § 1087–3, such that the court should determine the loans to be dischargeable.

A threshold issue, which was addressed by the Defendant's Post-Trial Memorandum of Law, concerns the applicability of 20 U.S.C. § 1087–3 to the instant proceedings. Counsel for the bankrupt argues that since 20 U.S.C. § 1087–3 was repealed on November 6, 1978, pursuant to the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549 (1978) (hereinafter the Reform Act), and since the trial of this case was held after the repeal on November 17, 1978, the law no longer provides for the preferential treatment of federally insured student loans. Thus, argues the defendant, the plaintiff cannot prevail as a matter of law. This contention, however, is without merit. In *N.Y.S.H.E.S.C. v. Yvonne Henry*, 5 BCD 1014 (S.D.N.Y.1979), this court held that, by virtue of the savings clause in the Reform Act, 11 U.S.C. § 403(a), and clear Congressional intent, 20 U.S.C. § 1087–3 is applicable to a case initiated prior to, but still pending as of the date of repeal of the provision. Since this case was initiated prior to the repeal of 20 U.S.C. § 1087–3, that

section is applicable in the instant case. Thus, all that remains to be determined is whether repayment of the bankrupt's student loans from her future income or other wealth would impose an "undue hardship" on her within the meaning of the statute.

20 U.S.C. § 1087–3 was originally proposed by the Commission on the Bankruptcy Laws as a response "to the rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of educational loan debts." Report of the Commission on the Bankruptcy Laws, H.R.Rep. No. 93–137, 93rd Cong. Part II, at 140 n. 14.

"The Committee bill [§ 1087–3] seeks to eliminate the defense of bankruptcy for a five-year period, to avoid the situation where a student, upon graduation, files for a discharge of his loan obligation in bankruptcy, then enters upon his working career free of the debt he rightfully owes. After a five-year period, an individual who has been faithfully repaying his loan may really become bankrupt. He should not be denied his right, and is not under the Committee bill." *U.S.Code Cong. and Admin.News*, 94th Cong., 2nd Session, 1976 Vol. at pp. 4713, 4744.

Section 1087–3 was subsequently adopted to assist in providing a more realistic view of a student's ability to repay his student loan; thus, guaranteed student loans may be discharged in bankruptcy only after five years from the commencement of the repayment period. An exception to this five-year limitation, though, is a case where exceptional circumstances exist. H.R.Rep. No. 94–1232, 94th Cong., 2nd Sess. (1976). According to Congress, only exceptional circumstances constitute the "undue hardship" required to secure discharge of a federally guaranteed student loan prior to the five-year period, tracked from the commencement of the repayment period.

The bankrupt herein asserts that undue hardship, evidenced by an alleged net loss income, permits her to obtain a discharge of her federally guaranteed student loans. Section 1087–3 requires the court to

look ahead and decide whether the bankrupt, based on future income, could repay his loans without undue hardship. The section does not define "undue hardship", but clearly it "must mean more than mere inconvenience . . . . [I]t must also mean something other than some difficulty." *N.Y.S.H.E.S.C. v. Carl John Kaneta*, No. 77–B–3605 (D.Colo., July 5, 1978), at 2. If the bankrupt's projected income would be "adequate to maintain the debtor and his dependents at a minimal standard of living . . . . as well as to pay the educational debt", then the loan should not be discharged. Bankruptcy Commission Report, *supra*, at 140–141. No strict rule or formula can be devised through which a finding of undue hardship *vel non* can be made. Statutory construction and legislative history indicate that the court must use its equitable discretion and examine each bankrupt's financial situation in order to determine whether repayment of a student loan would impose an undue hardship on the debtor or his dependents. Cf. *Beerman v. City of Kettering*, 14 Ohio Misc. 149, 237 N.E.2d 644 (1964), *aff'd* 13 Ohio St.2d 149, 235 N.E.2d 231 (1968); *Safer v. City of Jacksonville*, 237 So.2d 8 (Fla.1970). Under the facts of the instant case, this court is unable to conclude that repayment of her student loans would impose an undue hardship on the bankrupt.

The evidence adduced at trial showed that the bankrupt has been consistently employed, including the period during which she was continuing her education. Moreover, several of the items in the bankrupt's Statement of Annual Income and Expenses (hereinafter Financial Statement) were exaggerated estimated expenses and included items of the type which are not incurred on an annual basis. At the time of trial, the bankrupt's net salary was approximately $11,533.75, to which should be added her tax refund of $359.00 from New York State and $1,219.00 from the Federal Government, for a total net income of $13,111.75. Under the heading "Expenses" on the Financial Statement was listed $870.00 for "maintenance and repair", which amount included $420.00 spent to have her

apartment painted as well as amounts spent to repair major appliances, items which do not recur on an annual basis. So, at least $420.00 should be subtracted from the "maintenance and repair" estimate. Similarly, the $150.00 listed for "furniture and appliance cleaning and maintenance" should be eliminated from the Financial Statement since these expenses, too, will not recur on an annual basis. Medical expenses were listed at $800.00, although the bankrupt could account for only $410.00. "Professional and union dues" were listed as $390.00, although the bankrupt could account for only $308.00. In addition, the Financial Statement, under the heading "Liabilities", lists "pension loan payments" in the amount of $807.00, and "loan payments to the Beneficial Finance Company" in the amount of $700.00. These amounts do not, in fact, represent actual loan payments made during the year, but rather the total amount of the loans, much of which was paid off at the time of trial and which, according to the bankrupt's testimony, will have been completely paid off by July or August 1979. These amounts, then, should be eliminated from the Financial Statement. To sum up, the bankrupt's Financial Statement would more accurately read:

| | |
|---|---|
| Net Salary | $13,111.75 |
| Expenses and Liabilities | $11,983.00 |
| Net Profit | $ 1,128.75 |

This court also believes that no undue hardship would result if the bankrupt's annual clothing expenditures of $1,500.00 and "miscellaneous expenses" of $1,040.00 were reduced by several hundred dollars. The necessity of careful budgeting is not evidence of undue hardship, *N.Y.S.H.E.S.C. v. Carl John Kaneta, supra; N.Y.S.H.E.S.C. v. Jerry Neckanoff*, BK–77–12096–JD(A) (C.D. Ca., 1978). Furthermore, any hardship imposed by repayment on a bankrupt such as Ms. Brock, could be mitigated by extensions or moratoriums on payments, although it should be noted that Ms. Brock neither attempted to ascertain what her loan payments would be nor whether she was entitled to any extensions or moratoriums on

such payments. This court is inclined to agree with the sentiments expressed by the court in *N.Y.S.H.E.S.C. v. George E. Courtney, III*, No. 77–BK–2144 (N.D.N.Y., September 27, 1978), at 4:

"When a young man or a young woman decides to borrow money for a college education, some thought must be given to the decision. At that time the young person is inclined to value an education more than any other need. It is a voluntary act and consequences should be foreseen. The young person willingly assumes an obligation to repay the cost of receiving an otherwise unobtainable valuable asset. The student must be prepared to assume risks and endure some hardships—not undue hardships but some hardships."

Congress did not intend that a person in the bankrupt's situation be relieved of her obligation, when she is obviously able to make the necessary payments on her student loans. Accordingly, pursuant to the provisions of 20 U.S.C. § 1087–3, this debt is declared nondischargeable.

It is so ordered.