**In re Yvonne Alvera HENRY, Bankrupt.**

**NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION, Plaintiff,**

v.

**Yvonne Alvera HENRY, Defendant.**

**Bankruptcy No. 78 B 1006 EJR.**

United States Bankruptcy Court, S. D. New York.

May 15, 1980.

David W. Weschler, Community Law Offices, New York City, for bankrupt.

Regan, Goldfarb, Heller, Wetzler & Quinn, New York City, for New York State Higher Education Services Corp.

## DECISION ON COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF A DEBT

EDWARD J. RYAN, Bankruptcy Judge.

In this proceeding, the New York State Higher Education Services Corporation (NYSHESC) is seeking to have certain loan debts of Yvonne Henry, the bankrupt herein, determined non-dischargeable pursuant to 20 U.S.C. § 1087–3. Section 1087–3 provides in pertinent part:

(a) A debt which is a loan insured or guaranteed under authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five-year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of that five-

year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth *will impose an undue hardship on the debtor or his dependents.* (emphasis added)

On November 9, 1979 this court denied the bankrupt's motion to dismiss holding that § 1087–3 applies to this proceeding notwithstanding its repeal by the Bankruptcy Reform Act of 1978. *N.Y.S.H.E.S.C. v. Yvonne Henry,* 5 BCD 1014 (S.D.N.Y.1979).

Since five years have not elapsed from the date of commencement of the repayment period to the date of the bankrupt's discharge, the only issue to be determined is whether "payment [of the debt] from future income or other wealth will impose an undue hardship on the debtor or his dependents."

## BACKGROUND

In May 1976, the bankrupt graduated from the Columbia University School of Social Work with a Master of Science degree. At that time, her total indebtedness for guaranteed student loans was $4500.00.

On December 12, 1977 the bankrupt executed a promissory note to Chemical Bank, her lender, to repay the $4500.00 with interest at 7% per year with the first payment due on April 1, 1978. She defaulted and on May 31, 1978 she filed her voluntary petition in bankruptcy.

On July 14, 1978 the NYSHESC became principal creditor on the note by purchasing it from Chemical Bank pursuant to the guarantee agreement.

On August 29, 1978 NYSHESC instituted this adversary proceeding to determine the dischargeability of the bankrupt's student loan debt pursuant to 20 U.S.C. § 1087–3. Trial was had on March 3, 1980.

## FACTS

The bankrupt is single and supports one dependent, her five year old child. Both the bankrupt and her child are in good health.

Since January 1977 the bankrupt has shared a three-bedroom apartment with her brother, his wife and his two children. She does not contribute to rent, but she does pay for food, clothing and other essentials out of $250.00 that she receives from her family each month.

At trial, the bankrupt testified that she plans to move out of her brother's apartment as soon as she finds a suitable two-bedroom apartment and secures a job in the social work field. The rental on a two-bedroom apartment would be $350.00 to $400.00 per month.

Assuming the above, the bankrupt's other monthly expenses would be $250.00 for food, $150.00 for clothing and $200.00 for miscellaneous expenses. Therefore, the bankrupt's total monthly outlay would be $950.00 to $1000.00. Added to this would be payments of $52.25 per month that NYSHESC would expect over a ten-year period to fully repay the $4500.00 debt.

On the income side, the bankrupt has worked one job since her graduation in 1976. That was a funded Haryou Act position she held from June to November 1979. Her gross salary was approximately $250.00 per week and this has been the bankrupt's only source of income other than the money she has been receiving from her family.

With regard to her attempts to secure a job, the bankrupt has testified that she has applied for approximately 50 positions since May 1976, all within the social work area. At the time of trial she was hopeful that a particular job as counselor with Glie Community Services paying $12,500.00 per year would be offered to her.

## DISCUSSION

Although § 1087–3 provides that a discharge will not be granted without a showing of undue hardship, the statute does little to define what "undue hardship" means. An examination of its legislative history and the relevant case law, however, indicates that any showing of undue hardship must overcome a rather stringent test.

Section 1087–3 was originally proposed by the Commission on the Bankruptcy Laws in response "to the rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of educational loan debts." Report of the Commission on the Bankruptcy Laws, H.R.Rep. No. 137, Part II, 93rd Cong., 1st Sess. 140 n.14 (1973).

In its report, the Senate Committee on Labor and Public Welfare stated:

> The Committee bill [§ 1087–3] seeks to *eliminate* the defense of bankruptcy for a five-year period, to avoid the situation where a student, upon graduation, files for a discharge of his loan obligation in bankruptcy, then enters upon his working career free of the debt he rightfully owes. After a five-year period, an individual who has been faithfully repaying his loan may really become bankrupt. He should not be denied his right, and is not under the Committee bill. (emphasis added).

S.Rep. No. 882, 94th Cong., 2d Sess. 33, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 4713, 4744.

Section 1087–3 was subsequently adopted with the undue hardship exception to the five-year rule, although the exception was to be applied only in "exceptional circumstances." H.R.Rep. No. 1232, 94th Cong., 2d Sess. 14 (1976). For example, if the bankrupt's projected income would be "adequate to maintain the debtor and his dependents, at a minimal standard of living . . . as well as to pay the educational debt," then the loan should not be discharged. Bankruptcy Commission Report, *supra,* at 140–41.

The Report provided further that the determination of "undue hardship" is a factual one to be made on a case by case basis. *Id.*

> In a recent decision, this Court stated: No strict rule or formula can be devised through which a finding of undue hardship *vel non* can be made. Statutory construction and legislative history indicate that the court must use its equitable discretion and examine each bankrupt's financial situation in order to determine whether repayment of a student loan would impose an undue hardship on the debtor or his dependents.

*N.Y.S.H.E.S.C. v. Delores Elaine Brock,* 4 B.R. 491 at 494 (S.D.N.Y.1980). The court must "look ahead and decide whether the bankrupt, based on future income, could repay his loans without undue hardship." *Id.* at 494.

———.

Other courts have dealt with this issue.

In *N.Y.S.H.E.S.C. v. Carl John Kaneta,* No. 77–B–3605 (D.Colo. July 5, 1978), the court stated: "Certainly, the term must mean more than a mere inconvenience. Certainly, it must also mean something more than some difficulty." *Id.* at 2.

In *N.Y.S.H.E.S.C. v. Barbara Masefield,* No. 78 B 2317 (E.D.N.Y. March 13, 1979), Judge Platt stated:

> If, however, prior to the expiration of the five year period it becomes apparent that the debtor's financial situation at the conclusion of the five year period will *remain* unsound, despite adjustments to the debtor's repayment schedule, then, and only then, may the debtor accelerate the five year period and declare bankruptcy. This "undue hardship" which triggers acceleration of the five year period and permits premature declaration of bankruptcy must be of such a magnitude as to *severely* hinder financial stabilization within the five year period. It must be in the nature of an extraordinary financial burden imposed . . . by circumstances beyond [the debtor's] control. [*Arthur James Hayman v. Wilmington Trust Company and United Student Air Fund, Inc.,* No. 77–1473 BK–JE–B, 4 BCD 932 (S.D.Fla. April 25, 1978).]

*Id.* at 10.

Although the defendant is presently unemployed, her potential for future gainful employment is far from bleak. She possesses a Master of Social Work from Columbia University and she stated that she may soon resume working in her chosen field at a rate of approximately $12,500.00 per year. Furthermore, the bankrupt admits that

there are hundreds of organizations in New York City which have positions in her field to which she has not applied, and she apparently has made no effort to seek employment outside of her chosen field.

Therefore, it is not apparent to this court that the bankrupt's financial situation will remain unsound at the conclusion of her statutory five-year period. Moreover, the financial burdens imposed upon the bankrupt are neither extraordinary nor are they beyond the bankrupt's control. *See, N.Y.S. H.E.S.C. v. Barbara Masefield, supra.*

Judgment for the plaintiff is granted. Settle an appropriate order.