In re John R. HUNTEBRINKER, Debtor.

Bankruptcy No. 97–45941–293.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Dec. 31, 1997.

Stephen P. Walters, Brown and Crouppen, St. Louis, MO, for Debtor.

John V. La Barge, St. Louis, MO, Chapter 13 Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION .

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, 157 and Local Rule 9.01 of the United States District Court for the Eastern District of Missouri. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(L), which the Court may hear and determine.

### BACKGROUND

1. Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) on June 19, 1997.

2. On the day he filed his petition, Debtor also filed a Chapter 13 Plan.

3. Debtor later filed a First Amended [Chapter 13] Plan. Debtor proposes to fund his First Amended Plan by paying the Trustee $770.00 per month for two months and then $1,400.00 a month for 58 months. Debtor also agreed to send any tax return check he might receive to the Trustee for inclusion in the plan base. As part of his plan, Debtor proposed that he assume the lease on his wife's vehicle requiring a $450.00 per month payment which he would make outside the plan. Additionally, Debtor proposed that he retain his Mercedes automobile and make payments through the plan to Mercedes–Benz credit (the secured lender on the vehicle) representing $19,650.00 (the lesser of the value of the car and the amount owed on it) plus interest at a rate of 11.75%.[1] The First Amended Plan states that it will pay unsecured creditors a total of 50% of their claims.

4. The Chapter 13 Trustee objected to Debtor's First Amended Plan on the grounds that: it did not constitute Debtor's best efforts to repay his creditors and was not proposed in good faith. The Trustee maintained that Debtor's plan to repay his unsecured creditors half the value of their claims lacked good faith in light of the fact that the plan also called for Debtor to: retain a home with a $1,242.00 per month mortgage payment, assume a lease for his wife's car requiring monthly payments of $450.00, and retain a Mercedes automobile worth $19,-650.00.

5. Trustee also requested copies of Debtor's tax returns and receipt/disbursement statements of a self-employed debtor.

6. The Court heard argument on the confirmation of Debtor's plan on September 11, 1997.

### DISCUSSION

The Trustee has objected to the confirmation of Debtor's First Amended Plan, in part, because it is not proposed in good faith. Recently, the Bankruptcy Appellate Panel for this circuit observed that although the Bankruptcy Code, in section 1325(a)(3), bars a bankruptcy court from confirming a Chapter 13 plan "unless it has been proposed in good faith and not by any means forbidden by law" it does not define "good faith." *Nielsen v. DLC Inv., Inc. (In re Nielsen)*, 211 B.R. 19, 21 (8th Cir. BAP 1997). To determine whether a plan has been proposed in good faith, a court must examine the "totality of the circumstances." *Id.* (citing *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1348 (8th Cir.1990)).[2] Debtor has not violated section 1325(b)'s test of good faith in that he has stated his debts and expenses accurately,[3] has not made

---

1. Under Debtor's First Amended Plan the $4,350.00 remainder of Mercedes–Benz Credit's claim will be treated as unsecured.

2. The Eighth Circuit in *In re LeMaire* summarized the development of the law under section 1325. 898 F.2d at 1348. The *LeMaire* court explained that before 1984 the Eighth Circuit favored a "factors" test for evaluating good faith which it enunciated in *In re Estus*, 695 F.2d 311, 316 (8th Cir.1982). Then, the circuit court noted that although the "ability to pay" criteria in section 1325(b), enacted through the Bankruptcy Amendments and Judgeship Act of 1984, "sub-

sumed most of the Estus factors" its decision in *Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir.1987), "had preserved the traditional 'totality of the circumstances' approach with respect to Estus factors not addressed by the legislative amendments." 898 F.2d at 1348.

3. More accurately, the Court has not received evidence or even a suggestion that Debtor has not accurately stated his income, debts, or expenses. The Court notes, however, that the Trustee has asked the Court to order Debtor to provide him with copies of Debtor's tax returns and receipt/disbursement statements of a self-

fraudulent misrepresentations, has not mis-led the bankruptcy court and has not unfairly manipulated the Bankruptcy Code. After considering the totality of the circumstances, including the factors stated in *In re Estus,* 695 F.2d 311, 316 (8th Cir.1982), the Court concludes that Debtor's plan has been proposed in good faith.

The Trustee also argues that Debtor's proposed Chapter 13 plan does not represent his best efforts to repay his debts. The best efforts test is rooted in section 1325 which requires that a Chapter 13 plan must either pay all claims made against the debtor in full or "provide that all of the debtor's disposable income ... be applied to make payments under the plan." The purpose of section 1325(b) is to "ensure that the proposed Chapter 13 plan is the best efforts of the debtor as it provides a meaningful standard for determining what portion of a debtor's income must be devoted to a Chapter 13 plan." *See In re Jackson,* 173 B.R. 168, (Bankr.E.D.Mo. 1994) (citing Sen. Rep. No. 65, 98th Cong. 1st Sess. 20–22, 64 (1983)). Section 1325(b)(2) of the Bankruptcy Code provides that:

> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor which is not reasonably necessary to be expended—
>
> > (A) for the maintenance or support of the debtor or a dependant of the debtor; and
> >
> > (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

The court in *In re Sitarz,* 150 B.R. 710, 717 (Bankr.D.Minn.1993), explained that the Code's definition of disposable income balances the interest of unsecured creditors to receive a meaningful return on their claims with the interest of debtors to have flexibility in determining how to provide for themselves and their dependents. *See also In re Burris,* 208 B.R. 171, 176 (Bankr.W.D.Mo.1997) (bankruptcy court must determine that debtor's expenses are both accurately stated and "reasonably necessary" to find plan complies

with section 1325(b)). The *Sitarz* court neatly summarized the bankruptcy court's job in weighing the competing interests of Chapter 13 debtors and creditors stating that:

> It is not appropriate for the Court to mandate "squeezing the last dollar" from debtors in Chapter 13.... On the other hand, debtors do not have an absolute right to maintain all the incidents of their past lifestyles and status in society, particularly where they were characterized by luxury, excessive consumption of nonessentials, or inordinately high expenditures for purchases of necessities.

150 B.R. at 717 (citations omitted).

■ In the case at bar, Debtor's plan proposes that he will assume the lease on his wife's vehicle and make payments outside the plan of $450.00 a month to the lessor, Valley National. Such a monthly expense is not reasonably necessary to support Debtor or his dependents. Although the Court recognizes that the Debtor's wife and dependents need a means of transportation, a vehicle with a monthly payment of $450.00 is excessive when Debtor's plan contemplates repaying his creditors only 50% of the value of their claims by making monthly plan payments of $1400.00.

■ Debtor's plan also contemplates that he retain possession of his 1991 Mercedes–Benz automobile and pay Mercedes–Benz Credit monthly payments on $19,650.00 plus 11.75% interest (approximately $366.00 a month—assuming simple interest of 11.75% over the entire three year term and equal payments made throughout the 60 month span of the plan). The Court recognizes that a Mercedes–Benz automobile is generally considered to be a luxury item. The Court, however, must look beyond the stereotype or common perception and determine whether Debtor's proposed retention of the Mercedes is reasonably necessary to be expended for Debtor and his family's support. In other words, it does not matter whether the Debtor seeks to retain a Ford or a Mercedes, instead, the Court must evaluate whether

employed debtor. To the extent that the Court now finds that Debtor has accurately stated his debts and expenses it does not intend to foreclose

the Trustee from arguing the contrary after he has had an opportunity to examine the materials he has requested.

Debtor's creditors would fare better if he retained the car or if he were forced to surrender it and obtain a different one. The Court finds that Debtor needs a vehicle that can accommodate his family of five. Because Debtor does not have any equity in the 1991 Mercedes, its sale would not yield any value for his creditors. Further, the Court finds that the monthly payment Debtor proposes roughly approximates what it might cost him to purchase or rent a used car large enough for his family. Hence, a Court-ordered sale of the 1991 Mercedes would not create value for Debtor's creditors and would hinder Debtor's reorganization because procuring a different car would likely require his making a down payment.

██ A third element of Debtor's plan which the Trustee contests is his retention of his home and payment of its $1,242.00 per month mortgage outside of the plan. This $1,242.00 payment, according to the Schedule J Debtor filed, does not include either real estate taxes or property insurance. The Amended Schedules indicate the monthly real estate taxes are $220.00 and real property and mortgage insurance are $138.00. The Schedules also show that Debtor has approximately $27,000.00 worth of equity in his home. Not all of the $27,000.00 of equity would be available to Debtor's creditors if the Court ordered the sale of the house. First, Debtor could exempt $8,000.00 of the proceeds through the use of his homestead exemption. Also detracting from the proceeds available to Debtor's creditors would be such costs as a real estate commission and other related expenses. A real estate commission of six-percent is common which would be $11,400.00 if Debtor could sell his home for the $190,000.00 value he ascribes to it in his schedules and closing costs of approximately $100.00 to $250.00 would also have to be paid. Therefore, assuming Debtor could sell his home for $190,000.00, his creditors would realize approximately $7,500.00 of value. After selling their home Debtor and his family would need a place to live. The reasonable rent of a home or apartment large enough to house Debtor and his family likely would be much less than the more than $1,600.00 (mortgage plus insurance plus taxes) a month it will cost them to remain in their current home. Such housing is available for much less than their current monthly housing expenses in clean, safe sections of St. Louis County which are not as wealthy as the area where Debtor presently resides. The liquidation of Debtor's home will yield creditors a significant sum and will greatly reduce the family's future cost of housing which will enable Debtor to pay his creditors more during each month of his sixty-month, Chapter 13 plan. For these reasons, the Court will sustain the Trustee's plan objection related to Debtor's proposed retention of his family's home.

By way of observation, the Court notes that this bankruptcy is the result of Debtor's excessive and some might say extravagant lifestyle. The Schedules filed with the Court reveal that Debtor and his wife drove luxury vehicles and lived with their children in a wealthy and exclusive section of St. Louis County. The Schedules also show that Debtor incurred gambling debts totaling $4,000.00 (Debtor lists debts of $2,000.00 each to the Alton Belle and Casino Queen gambling boats, not to mention the miscellaneous cash loss listed in Debtor's Statement of Financial Affairs). The plan Debtor proposes seeks to perpetuate such a lifestyle and yet pay his creditors less than half of what he owes them. Such a plan does not represent Debtor's best efforts.

As a final matter, the trustee has asked the Court to order Debtor to provide him with copies of Debtor's tax returns and receipt/disbursement statements of a self-employed debtor. The Court will grant Trustee's request for production of these records.