**In re Anthony Lee WILLIAMS and Dianna Lynne Williams, Debtors.**

**Anthony Lee Williams and Dianna Lynne Williams, Plaintiffs,**

**v.**

**Missouri Southern State College, Student Loan Servicing Center, University Accounting Service, Inc., and U.S. Department of Education, Defendants.**

Bankruptcy No. 98–30871SW–7–JWV.
Adversary No. 98–3034.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

April 29, 1999.

W. Henry Johnson, Neosho, MO, for plaintiff.

Ronald E. Mitchell, Earl W. Brown, III, for defendant.

Norman E. Rouse, Joplin, MO, trustee.

### MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

Dianna Lynne Williams and her husband, Anthony Lee Williams, the Debtors in these Chapter 7 proceedings, filed a Complaint seeking a discharge of certain student loans obtained by Dianna when she attended college at Crowder Junior College and Missouri Southern State College in the early 1990s. The Debtors sought a discharge pursuant to 11 U.S.C. § 523(a)(8), on grounds that excepting the debts from discharge would impose an undue hardship on the Williamses and their dependents.[1]

The Missouri Coordinating Board for Higher Education, the Missouri Student Loan Program, and the Missouri Higher Education Loan Authority were among seven defendants named originally in the Williamses' Complaint. Those defendants moved to dismiss the Complaint against them on the basis that, as state agencies, they had sovereign immunity and could not be sued without their consent, pursuant to the Eleventh Amendment to the United States Constitution and the Supreme Court's holding in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Inasmuch as the State agencies had done nothing to waive

---

**1.** The Debtors also pleaded that the student loan debts were subject to discharge on grounds that they first became due more than seven years prior to the filing of the bankruptcy petition. However, Congress repealed § 523(a)(8)(A) effective October 7, 1998, and therefore that basis for nondischargeability was not available to the Debtors. They did not pursue that theory at hearing.

their immunity, the Court granted the State's Motion to Dismiss and those defendants were dismissed from the proceeding on January 14, 1999. See *In re Rose,* 227 B.R. 518, 522–23 (W.D.Mo.1998).

Missouri Southern State College and three defendants represented by the United States Department of Education remained as defendants after the dismissal of the state agencies. A trial hearing was held on April 22, 1999, in Joplin, Missouri. After considering the evidence and the legal issues, the Court finds that the Debtors are able to pay at least some of their student loan debts, and therefore the Williamses will be granted a discharge with respect to the student loan debt to the U.S. Department of Education but will be denied a discharge with respect to the educational loan still owing to Missouri Southern State College.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334(b) and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I). The following constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

### FACTS

The facts in this case were undisputed. Dianna Williams ("Dianna"), who is now 33 years old, dropped out of high school after she had completed the 10th grade. However, she earned her General Educational Development certificate (GED) in December 1982. She married her husband, Anthony Williams ("Anthony"), in May 1983 and she and Anthony now have four children ranging in age from 11 to 16. All of the children live at home and are in school, and the 16–year–old daughter is pregnant and expects her child to be born in October. In addition to their four natural children, the Williamses are the court-appointed legal guardians for an unrelated 17–year–old girl who suffers from dwarfism. They receive support payments of $166.20 a month from this child's father.

After working at numerous minimum wage jobs in the 1980s, Dianna began taking courses in 1991 at Crowder Junior College and in 1994 obtained an associates degree in education. This degree was not sufficient to enable Dianna to obtain a teacher's certificate in Missouri, so Dianna began attending classes at Missouri Southern State College. She was a full-time student, worked a late-night shift at a convenience store, and delivered newspapers, as well as carrying out her responsibilities as wife and mother. Her schooling was financed, at least in part, with various student loans. However, she eventually had to drop out of school because of her family situation, and still needs to complete 1½ years of classes in order to obtain her college degree. Dianna testified that there is "no way" she can quit work and return to school full-time to get her degree.

The parties stipulated that the balance of the student loans owed by Dianna to Missouri Southern State College is approximately $3,290.00, and that the student loan debt to the U.S. Department of Education or its agencies is approximately $8,021.00. In addition, Dianna still owes more than $10,200.00 on the student loans obtained through the State of Missouri and its student loan agencies.

At the present time, Dianna works full-time as a laborer or machine operator at a factory which produces paint guns and paint balls. According to her amended bankruptcy schedules, she earns gross wages of $1,500.00 a month, which results in net income of $1,082.00 a month. Her husband, who is a high school graduate, also works as a laborer and earns gross wages of at least $1,950.00 a month, which translates to a net of $1,309.00 a month. Apparently, Anthony will earn substantial additional income as a result of working a large amount of overtime at certain times of the year. The Debtors presently have net income of $2,557.00 a month, including the support payments received for their 17–year–old ward but excluding any overtime income earned by Anthony. Com-

bined, the Williamses had a gross income of $39,131.00 in 1998. By comparison, their total combined gross income in 1995 was just $22,000.00.

When they filed their Chapter 7 Petition on September 28, 1998, the Williamses were driving a 1980 Chevrolet Suburban and that vehicle now has over 200,000 miles on it. They make payments of $220.00 a month for the Suburban. Since filing their bankruptcy, the Debtors have obtained another vehicle, a 1995 Pontiac Grand Am, for about $8,000.00. Because of their poor credit, the Williamses had to obtain the Pontiac in Dianna's mother's name, and they must pay Dianna's mother $300.00 a month on this vehicle. If they fail to make the payments, Dianna's mother will sell the car.

Anthony contributes $86.00 a month to the 401(k) plan at his place of employment, and he also makes a $130.00 a month payment on a loan obtained from his 401(k) plan. That loan, for about $5,500.00, was obtained less than two years ago for the purpose of paying other bills. Counsel for the Department of Education noted that the Williamses had incurred bank charges in 17 of 24 recent months, ranging generally from $15.00 to $45.00 a month, for writing insufficient funds checks, and suggested that, if such practices were stopped, those funds could be made available to service the student loan debts. The amended schedules showed only $50.00 a month in spending on recreation and entertainment, and Dianna testified that she spends about $10.00 a week for cigarettes. The family has no serious medical problems, although one child suffers from asthma and must take medication daily. Another child needs eyeglasses. Other than these items, the Debtors did not produce evidence of any extraordinary expenses.

Dianna testified that she had tried on a couple of occasions to make payments on the student loan debts and that she had obtained deferments at least twice. However, she testified that she cannot now pay the student loans and that she cannot foresee ever being able to pay them.

## DISCUSSION

Section 523(a)(8) of the Bankruptcy Code ("Code") provides that educational or student loans are excepted from the general discharge provisions of the Code "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). It is uncontroverted that the student loans obtained by Dianna Williams when she was attending Crowder Junior College and Missouri Southern State College are educational loans that fall within the ambit of this provision.[2]

"Undue hardship" is not defined in the Code. Therefore, it is in the discretion of the bankruptcy court to determine, on a case-by-case basis, whether the facts warrant a determination of dischargeability of the debt. *In re Rose*, 215 B.R. 755, 763 (Bankr.W.D.Mo.1997); *Andrews v. South Dakota Student Loan Assistance Corporation (In re Andrews)*, 661 F.2d 702, 704 (8th Cir.1981). As stated in *In re Wegfehrt*, 10 B.R. 826 (Bankr.N.D.Ohio 1981):

> "The bankruptcy court must determine whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living."

10 B.R. at 830.

A number of tests for undue hardship have been developed over the last two

---

**2.** The parties did not introduce copies of the student loan obligations or notes, and the Court is uncertain whether Anthony Williams was a co-signer or guarantor of the notes or whether he had no obligation on them. However, his status vis-a-vis the student loans does not affect the Court's analysis.

decades, each trying to accurately reflect and enforce the policies Congress intended by enacting the student loan exception to the discharge exception. The various tests have some significant differences.[3] Many bankruptcy courts, including several in the Eighth Circuit, have employed the test developed by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2nd Cir.1987). Under the *Brunner* test, a debtor can establish undue hardship for the purposes of discharge under § 523(a)(8) if she can show (1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) the debtor has made good faith efforts to repay the loans. *Brunner*, 831 F.2d at 396.

■ The Bankruptcy Appellate Panel (BAP) for the Eighth Circuit recently observed that the Eighth Circuit Court of Appeals has not expressly adopted or rejected the *Brunner* test or any other test for undue hardship, but concluded that the Eighth Circuit had expressed its preference for a "totality of the circumstances" test in *Andrews v. South Dakota Student Loan Assistance Corporation (In re Andrews)*, 661 F.2d 702, 704 (8th Cir.1981). "The test for undue hardship binding bankruptcy courts in the Eighth Circuit is that held by the Court of Appeals in *Andrews.*" *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 139, 140 (8th Cir. BAP 1999). The totality of the circumstances test established by *Andrews* requires an analysis of (1) the debtor's past, present, and reasonably reliable future financial resources, (2) calculation of the debtor's and his or her dependents' reasonable necessary living expenses, and (3) any other relevant facts and circumstances surrounding the particular bankruptcy case. *Andresen*, at 140. The BAP concluded:

> "We interpret *Andrews* to require a totality of the circumstances inquiry with special attention to the debtor's current and future financial resources, the debtor's necessary reasonable living expenses for the debtor and the debtor's dependents, and any other circumstances unique to the particular bankruptcy case."

*Andresen*, at 140.[4]

This Court believes, on the basis of the foregoing discussion, that the totality of the circumstances test enunciated by the Eighth Circuit in *Andrews*, as further clarified by the Eighth Circuit BAP in Andresen, is the appropriate test to be applied in the present case.

### 1. The Debtors' current and future financial resources

■ As noted above, at the time of the dischargeability hearing, the Debtors had a current combined gross income of $3,450.00 a month ($1,950.00 for husband and $1,500.00 for wife). In addition, the Williamses receive $166.20 a month for the support of the 17–year–old girl for which they are the guardians, and Anthony

---

3. These differing tests have been examined in some detail recently by the Eighth Circuit Bankruptcy Appellate Panel in *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127 (8th Cir. BAP 1999). Nothing would be added to the literature by a repetition of that analysis here.

4. As the BAP in *Andresen* observed, there are many courts applying a totality of the circumstances test for undue hardship under § 523(a)(8). See, e.g., *Moorman v. Kentucky Higher Educ. Assistance Auth. (In re Moor-* *man)*, 44 B.R. 135, 137–38 (Bankr.W.D.Ky. 1984); *D'Ettore v. Devry Inst. of Tech. (In re D'Ettore)*, 106 B.R. 715, 718 (Bankr.M.D.Fla. 1989); *Coleman v. Higher Educ. Assistance Found. (In re Coleman)*, 98 B.R. 443, 451 (Bankr.S.D.Ind.1989); *Ford v. Tennessee Student Assistance Corp. (In re Ford)*, 151 B.R. 135, 138–40 (Bankr.M.D.Tenn.1993); *Evans v. Higher Educ. Assistance Found. (In re Evans)*, 131 B.R. 372, 375–76 (Bankr.S.D.Ohio 1991).

Williams earns an unspecified amount each year by working a substantial amount of overtime. Therefore, it is safe to say that the Debtors have total gross family income of approximately $45,000.00 a year at this time.

There was also evidence that the Williamses' income has increased substantially in recent years, from $22,000.00 in 1995 to more than $39,000.00 in 1998, though no explanation was provided for this rather dramatic increase in income. Nor did the Debtors adduce any evidence of their future earnings potential or prospects. However, the Court is doubtful that similar increases in income will be experienced by the Debtors in the future. The husband is a laborer earning gross wages of $1,950.00 a month, and it is unlikely that he could expect to earn much more than that unless he acquires special skills or the like in the future. Likewise, the wife is a machine operator or laborer at a business which produces paint guns and paint balls, and it would appear that her opportunities for advancement and increased pay are not great. Should there be a downturn in the economy, it is likely that the Debtors would be among the first workers to be laid off or lose their jobs, in view of the fact that it is usually the unskilled workers who are the first to be terminated when cutbacks are made.

It is also likely that the Debtors will no longer receive the support payments for their ward after that child turns 18. Under Missouri law, a parent is not required to support a child after the age of 18, unless that child goes on to attend college, and in this case that appears unlikely. § 452.340.3, RSMo. Further, under Missouri law a guardianship terminates when the minor ward reaches the age of 18, so it would appear that the Debtors' guardianship will terminate soon. § 475.083, RSMO. In either case, the Debtors will likely experience a decrease of at least $166.20 a month in their income very shortly.[5]

Therefore, while it appears that the Debtors do enjoy a present income that is above the average,[6] the prospects for any substantially increased income in the future are not promising. Accordingly, the Court does not believe that the Debtors will have a significantly larger income in the future from which the student loan debts can be paid.

## 2. The Debtors' necessary reasonable living expenses

The Debtors filed Amended Schedules I and J which showed monthly net income of $2,557.00 and monthly living expenses of $2,855.00, a deficit of $298.00. The living expenses listed by the Debtors for a family of seven, including four teenagers, were:

| | |
|---|---|
| Rent or home mortgage payment | $450.00 |
| Utilities: Electricity and heating fuel | 200.00 |
| Water and sewer | 40.00 |
| Food | 600.00 |
| Clothing | 200.00 |
| Laundry and dry cleaning | 50.00 |
| Medical and dental expenses | 100.00 |
| Transportation (not including car payments) | 225.00 |
| Recreation, clubs and entertainment, newspapers, etc. | 50.00 |
| Insurance: Auto | 65.00 |

5. This is not to imply that the Debtors should be using or should be expected to use the ward's support payments to pay their student loan debts. On the contrary, those funds should be used to support the minor ward. The Court suspects that $166.20 a month is insufficient to meet the needs of the ward.

6. The median income for Newton County, Missouri is $29,297.00. 1990 Census, Statistical Abstract for Missouri House Districts (1993). However, it should be noted that this figure is for an average family of 3.07 members and the Debtors have a family of 7 including the ward in their care.

| Installment payments: Auto Roper | 220.00 |
|---|---|
| 1995 Grand Am | 300.00 |
| Miscellaneous Expenses | 100.00 |
| School and Ext. Activities | 60.00 |
| School Lunches | 70.00 |
| School Supplies | 125.00 |

It would be difficult to argue persuasively that these living expenses are unreasonable or unnecessary. Certainly, the basic living expenses for a family of seven do not appear to be excessive. It is noteworthy that the schedule does not include any expense for telephone service or cable television, two items that are almost considered necessities in most U.S. households today. Dianna Williams testified that she is able to clothe the family on $200.00 a month only because she purchases the children's clothing on sale and does not buy name-brand labels. The food expense of $600.00 a month seems reasonable for such a large family, and two vehicles would appear to be a necessity in view of the fact that both parents work and there are several children that would require transportation from time to time. The only "luxury" expense that was brought to the Court's attention was Dianna's expenditure of about $10.00 a week for cigarettes.

It should be anticipated, of course, that the Debtors' living expenses will decrease in the not too distant future. Within five years, four of the children should be graduated from high school and able to begin earning their own living. If the children work but remain at home, they could be expected to contribute to the family's necessary living expenses. If, on the other hand, the children choose to live elsewhere, the family's living expenses should be reduced.

There is one present potential source of funds that could be made available for at least small monthly payments on the student loan debts. Anthony contributes $86.00 a month to his 401(k) plan at his employment, and he also pays $130.00 a month on a 401(k) loan which apparently has about two years to run. Reducing the monthly contribution to the 401(k) plan, even if by just $30.00, would enable the Debtors to begin making a small monthly payment on the student loan debt. Moreover, when the 401(k) loan is paid off, the Debtors would have an additional $130.00 a month with which to make payments on the student loans. Therefore, it is possible that, in the future, the Debtors would be able to make at least *some* payment on their student loan debts. *Andrews,* 661 F.2d at 704; *In re Rose,* 227 B.R. 518, 526 (W.D.Mo.1998) ("[E]ven if she [the debtor] can only repay a portion of the debt, she should do so.").

### 3. Other unique circumstances in this particular case

The Debtors have not adduced evidence of any especially unique circumstances that would support relieving them of the student loan debt. The only circumstance that would seem to set them apart from many other struggling families is the responsibility they have assumed as guardians for a 17–year–old handicapped girl who was literally abandoned on their doorstep by the natural mother. The Debtors are to be commended—not penalized—for their willingness to care for this abandoned child, particularly in view of the stringent financial circumstances under which they are living. Experience would suggest that this child will not be able to leave the Debtors' home upon reaching age 18 and make her own way in the world, but rather will likely remain in the Debtors' home so long as they are able to care for her. In addition, the Debtors' 16–year–old daughter is pregnant and the child's father, also 16 and a high school student, is unable to provide for the child's support or pay the mother's medical and birthing expenses. Therefore, it is more likely than not that the Debtors will have continuing

expenses with respect to these two children, and perhaps for a grandchild as well.

Finally, it must be remembered that the Debtors will not be receiving a discharge for approximately $10,200.00 in student loan debts owed to the State of Missouri. As noted earlier, the State agencies were dismissed from this proceeding on grounds of sovereign immunity, and therefore the Debtors (or at least Dianna Williams) will remain liable on those educational loans. The State of Missouri, having avoided a determination of dischargeability in this proceeding, may be expected to pursue collection of the student loans owed to the State.

## CONCLUSION

■ The Court has carefully considered the totality of the Debtors' circumstances in this case, and concludes that the Debtors have shown that they cannot maintain a minimal standard of living and also pay all of their student debts. However, the Court also concludes that the Debtors should be able to pay at least *some* of the student loan debt. In the *Andresen* case, the Eighth Circuit BAP approved of the bankruptcy court's granting the debtor a discharge on some of her student debts but not on all of them, on grounds that the debtor was unable to pay all of the debts but would be able to pay some of them. The Court believes that similar circumstances exist in the present case. Given the Debtors' education and work skills, it is unlikely that they will experience significantly higher earnings in the future. They will continue to have high family expenses for several years, until at least some of the children have left home to earn their own way. Regardless of what this Court does in this case, the Debtors will still be obligated to repay the State of Missouri on a student loan debt in excess of $10,200.00.

■ Accordingly, the Court finds that excepting from discharge the educational loan obtained from the U.S. Department of Education, with a present balance of approximately $8,021.00, would impose an undue hardship on the Debtors and their dependents, and that the Debtors should therefore be granted a discharge from that debt. The Court finds that the Debtors will be able, without undue hardship, to repay the student loan owing to Missouri Southern State College in the present approximate amount of $3,290.00. In arriving at this determination, the Court has considered the capacity of the respective lenders to absorb the loss of nonpayment, and believes that, on balance, the Department of Education, with its much greater resources, is better able to absorb the loss of nonpayment than is the state college.

For the foregoing reasons, it is

**ORDERED** that the Debtors, Anthony Lee Williams and Dianna Lynne Williams, be and are hereby granted a discharge from the educational loan obligations owed to the United States Department of Education, in the present approximate amount of $8,021.00. It is

**FURTHER ORDERED** that the Debtors be and are hereby DENIED a discharge on the educational loan owed to Missouri Southern State College in the present approximate amount of $3,290.00.

Judgment shall be entered by the Clerk in accordance with this Order.