In re Sallye Lorraine BROWN, Debtor.

Sallye Lorraine Brown, Plaintiff,

v.

Union Financial Services, Inc., Defendant.

Bankruptcy No. 99–43207. Adversary No. 99-4312.

United States Bankruptcy Court, W.D. Missouri.

April 12, 2000.

---

33. 11 U.S.C. § 363(a)(3) and (4).

34. Case No. 99–60983, Doc. # 3.

35. *Id.* at Doc. # 7.

36. *Id.*

37. *Id.*

Roger M. Driskill, Liberty, MO, for debtor/plaintiff.

Richard M. Beheler, Blackwell Sanders et al., Kansas City, MO, for defendant.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Debtor Sallye Lorraine Brown filed this adversary proceeding in order to petition this Court to determine that repayment of an obligation she owes to the Nebraska Student Loan Program (NSLP), as assignee of defendant Union Financial Services, Inc., would impose an undue hardship on her and is, therefore, dischargeable in her Chapter 7 bankruptcy case. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### ISSUES PRESENTED

1. Brown enrolled in college in 1988 when she was 48 years old. She graduated in 1992 with a Bachelors of Social Work. At that time she had acquired approximately $36,634.53 in student loans. She has asked for, and obtained, forbearances since that time. The most recent Repayment Addendum and Disclosure Statement provided to Brown requires her to make payments until she is 81 years old. In the Eighth Circuit the Court must look at the relevant facts and circumstances in a particular case to determine if requiring a debtor to repay a student loan would impose an undue hardship. Is requiring someone to work until she is 81 years old in order to repay a student loan obligation a relevant circumstance in making that determination?

2. Brown owns a 1997 Taurus that she drives to work each day. Her car payments are $243.00 a month, her auto insurance is $100.00 a month, and her gas, oil, and maintenance expenses are $130.00 a month. In the Eighth Circuit a debtor must prove she cannot maintain a minimum standard of living if forced to repay her student loan obligation. Are automobile expenses of $473.00 a month allowable in order to maintain a minimum standard of living?

### DECISION

1. The age of a debtor becomes a relevant circumstance to be considered by the Court in making an undue hardship determination when the student loan lender proposes a 20 year repayment schedule in order to demonstrate that a debtor can repay the student loan obligation. Requiring someone to repay a student loan under

a repayment schedule that far exceeds one's average working life imposes an undue hardship on the debtor.

 2. A debtor can continue to own an automobile in order to maintain a minimum standard of living as long as the automobile expenses are reasonable. In this Court, automobile expenses will be presumed reasonable if they conform to the Collection Financial Standards issued and used by the Internal Revenue Service (the IRS) to determine a taxpayer's ability to pay a delinquent tax liability. In Kansas City, Missouri the IRS allows a debtor $670.00 a month to own and operate a car. Since Brown's expenses are less than that sum, they are reasonable.

### FACTUAL BACKGROUND

Brown, divorced since 1982, began college in 1988, and she graduated with a Bachelors of Social Work in 1992. Prior to going to college Brown worked as a secretary, but testified that she is no longer qualified to do that work because she has not learned to use computers. She has practiced as a licensed social worker since graduation. For the last two years she has practiced at the Northland Community Center in Excelsior Springs, Missouri. Her annual income is now $24,000.00, though at the time she filed this Chapter 7 bankruptcy case she was earning $22,500.00 a year. She testified that her income is commensurate with other social workers' salaries. Brown was 48 years old when she began college, and she testified that she is now 61 years old. She also testified that she is bi-polar and takes medication for that condition, that she has asthma and other allergies, and that her general health is not good. She claims, however, that she is able to go to work every day. She stated she does not anticipate a significant increase in salary, and that she has no retirement benefits, save social security.

Brown made one payment in the amount of $75.00 on her student loan obligation, but with that exception she has sought, and been granted, forbearances since she graduated. She stated she has not explored any other employment opportunities because she enjoys working as a social worker. Indeed, that is the work her education qualifies her to do.

On April 20, 1999, Brown received from Union Financial Services, Inc. a document designated as Repayment Addendum and Disclosure Statement (the Repayment Schedule).[1] The Repayment Schedule indicates that the disclosures contained therein were being made because the forbearance periods were ending. The Repayment Schedule requires Brown, beginning May 15, 1999, to make 24 monthly payments in the amount of $282.83. The monthly payments escalate every two years by approximately $15.00 a month. By May 15, 2017, after the last escalation, and when Brown is 79 years old, she is scheduled to make 21 payments of $434.40, followed by one final payment, on February 15, 2019, in the amount of $526.30.[2] Brown stated that when she received the Repayment Schedule she believed she could not request any more forbearances. In addition, Brown testified that she had been earning extra income in the past by working with her daughter, who sells flowers in restaurants, but her daughter could no longer afford to pay her. Since she did not have any disposable income to begin making the monthly payments on her student loan obligation, and since she was behind in some of her other obligations, Brown filed this Chapter 7 bankruptcy petition on August 13, 1999.

At the time of filing, Brown's net monthly income was $1,465.00, and her monthly expenses were $1,462. Since then, Brown testified that she has received a raise. She stated she received $673.00 every two weeks before her raise, and now she receives approximately $723.00 every two

---

1. Def.Ex. # 4.

2. *Id.*

weeks. Her average net monthly income is, therefore, approximately $1,566.50 ($723.00 × 26 pay periods = $18,798 ÷ 12 = $1,566.50). Brown also testified that her car payment has decreased by $132.00. Brown's expenses are:

| | | |
|---|---|---|
| 1. | Lot Rent for a mobile home she owns | $206.00 |
| 2. | Electricity | 89.00 |
| 3. | Telephone | 50.00 |
| 4. | Cable Television | 40.00 |
| 5. | Home maintenance | 25.00 |
| 6. | Food | 250.00 |
| 7. | Clothing | 50.00 |
| 8. | Laundry and dry cleaning | 25.00 |
| 9. | Medical and dental | 25.00 |
| 10. | Transportation | 130.00 |
| 11. | Recreation | 50.00 |
| 12. | Automobile insurance | 100.00 |
| 13. | Automobile payment | 243.00 [3] |
| | Total | $1,333.00 |

Thus, assuming a net monthly income of $1,566.50 and expenses of $1,333.00, Brown has disposable income of approximately $233.50. Despite this apparent improvement in her situation since filing for bankruptcy relief, Brown testified that she cannot pay her other expenses, operate her automobile, and repay her student loans. She also testified that she is dependent upon her car to get to work, as there is no public transportation in her area.

Counsel for NSLP argues that, while Brown cannot likely repay her entire student loan obligation, she can make payments at this time. He also argues that Brown is working in her field, that she is using the education made available to her by her student loans, and that she chooses not to abandon that field in order to earn more income. He concedes that Brown cannot earn substantially more income as a social worker, but he makes no suggestion as to what other type of work, at higher pay, Brown is qualified to do. Counsel also raises as an issue Brown's automobile expenses. He questions whether a debtor should own an automobile if the cost of ownership decreases the amount of money available to reduce a student loan obligation. In light of the fact that public transportation is not available to Brown, counsel for NSLP suggests that, since Brown lives in a mobile home, she could locate the mobile home sufficiently close to her job that she may not have need of the car. Finally, counsel for NSLP suggests that Brown will in all likelihood retire within four years, therefore, she will not need a car to get to work.

I will first address whether Brown has the ability to repay the student loan. I will then address what is a reasonable automobile expense in this Court.

### DISCUSSION

Section 523(a)(8) of the Bankruptcy Code (the Code) excepts student loans from discharge unless to do so would impose an undue hardship on the debtor and his dependents:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.[4]

There is no definition of undue hardship in the Code, therefore, it is within the discretion of the bankruptcy court to determine if the facts of a particular case warrant a finding that the debt is dischargeable.[5]

---

3. Def.Ex. 1. Brown's Schedule J indicates that her car payment is $375.00, but she testified that she was driving a Ford Escort when she filed her petition. The payments on the Ford were $375.00 a month. She surrendered that car and now drives a 1997 Taurus. The monthly payment on the Taurus is $243.00 a month.

4. 11 U.S.C. § 523(a)(8).

5. *Ipsen v. Higher Educ. Assistance Found. (In re Ipsen)*, 149 B.R. 583, 585 (Bankr.W.D.Mo. 1992); *Johnson v. USA Funds, Inc. (In re Johnson)*, 121 B.R. 91, 93 (Bankr.N.D.Okla. 1990).

The Bankruptcy Appellate Panel for the Eighth Circuit (the BAP), recently held that the Eighth Circuit requires bankruptcy courts to apply a "totality of circumstances" test to make that determination.[6] In *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, the Eighth Circuit first adopted the "totality of circumstances" test to determine undue hardship.[7] The BAP articulated the "totality of circumstances" test to require the Court to consider the following: (1) the debtor's current and future financial resources; (2) the debtor's reasonable living expenses; and (3) any other relevant facts and circumstances in the particular case.[8] Thus, in making a determination as to whether excepting a student loan from discharge will impose an undue hardship, I look first to Brown's current and future financial resources. It appears that Brown does have some current resources to devote to repayment of her student loan obligation. That, however, is not determinative in this case. NSLP proposes a 20–year repayment schedule with a minimum payment for 24 months of $283.83.[9] Brown has insufficient disposable income to make even that minimum payment. Moreover, while Brown's income is likely to increase very little over the remainder of her working life, her payments escalate to $296.64 by May 15, 2001.[10] By May 15, 2003, when Brown will be 65 years old and ready to retire, the payments escalate once again to $311.13.[11] Brown testified that she will be entirely dependent upon her Social Security bene-

fits when she retires, as she has no other retirement benefits. Thus, for the remainder of the repayment period, as the payments are escalating, Brown's income will be decreasing. Obviously, NSLP proposes a 20–year escalating repayment schedule for the traditional college graduate whose income will presumably increase over the course of the graduate's working life. Moreover, NSLP makes an assumption that a graduate will, in fact, have at minimum a 20–year working life. In this situation, however, those assumptions are not viable. It is arguable that when Brown graduated in 1992, at the age of 52, she could have repaid her student loans over a 13–year repayment period. But NSLP's predecessor granted forbearances to Brown for 7 years, presumably based on her demonstrated inability to make payments. Now, with a projected working life of as little as 4 years, NSLP proposes that she has the ability to repay a student loan in the principal amount of $36,634.53 plus interest. Such a proposal is not reasonable.

Counsel for NSLP agrees that Brown cannot repay the entire student loan. I find nothing in the Code that allows me to restructure the student loan obligation or reduce it.[12] I must, therefore, find either that Brown has the ability repay the entire obligation, or that repayment of the entire loan would impose an undue hardship. I am aware of decisions in other Circuits that reduce a student loan obligation to an amount that the debt-

6. *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 139 (8th Cir. BAP 1999).

7. See *Id.* (citing *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir.1981)).

8. *Williams v. Missouri Southern State College (In re Williams)*, 233 B.R. 423, 427 (Bankr. W.D.Mo. April 29, 1999).

9. Def.Ex. 4.

10. *Id.*

11. *Id.*

12. See *United Student Aid Funds, Inc. v. Taylor (In re Taylor)*, 223 B.R. 747, 753 (9th Cir. BAP 1998) (holding that 11 U.S.C. 523(a)(8) does not authorize a partial discharge of student loans); *Shankwiler v. Nat'l Student Loan Marketing (In re Shankwiler)*, 208 B.R. 701, 707 (Bankr.C.D.Ca.1997) (holding that the language of section 523(a)(8) is clear and unambiguous that a debtor's liability on a student loan' debt encompasses the entire debt, not merely a portion thereof).

or can repay.[13] No decisions in the Eighth Circuit, however, endorse such an action, nor will I.[14] I, therefore, find that Brown, in light of her age, does not have the current or future financial resources to repay her student loan obligation and maintain a minimum standard of living. I further find that Brown's age is a relevant circumstance to be considered by the Court in making that determination.

As to Brown's automobile expenses, counsel for NSLP cites no case that holds that a debtor is not allowed to own an automobile if the debtor seeks to discharge her student loans. And this Court has found no case that so holds. In fact, the State of Missouri allows a debtor to exempt from the claims of all creditors up to $1000.00 equity in an automobile.[15] And, section 513.427 of Missouri's Revised Statutes extends that same exemption to every debtor that files for bankruptcy relief.[16] *In Levin v. Mauro*[17] the court held that exemptions are not only a reflection of the necessities of economic recovery, they are also a "manifestation of 'the belief that every person is entitled to retain free of charge a certain minimum of the necessaries of existence.' "[18] Thus, I find that, since Brown is entitled to exempt the equity in her automobile in Missouri, it is necessary to her minimum existence. Some cases do question whether certain makes and models of automobiles are too expensive to own or operate during the pendency of a bankruptcy case.[19] Those cases, however, analyze whether the expense of retaining a particular automobile is a reasonable expense to be extended for the support of the debtor.[20] No Court has held that an otherwise reasonable automobile expense should be disallowed if a debtor seeks to discharge a student loan obligation. In looking at the reasonableness of the automobile expense, this Court is guided by the Collection Financial Standards issued by the IRS. The Collection Financial Standards are used by the IRS in determining a taxpayer's ability to pay a delinquent tax debt.[21] The transportation standard consists of a nationwide figure for the cost of owning or leasing a car and a monthly operating cost allowance broken down by Census Region and Metropolitan Statistical Areas (MSA).[22] The sum allowed for ownership costs on a national basis is $391.00 for the first car.[23] The sum al-

---

13. *See Id.* at n. 3 (citing *Rivers v. United Student Aid Funds, Inc. (In re Rivers),* 213 B.R. 616, 618 (Bankr.S.D.Ga.1997); *Heckathorn v. United States (In re Heckathorn),* 199 B.R. 188, 195–96 (Bankr.N.D.Okla.1996); *Wetzel v. New York State Higher Educ. Servs. Corp. (In re Wetzel),* 213 B.R. 220, 226–27 (Bankr.N.D.N.Y.1996); *Raimondo v. New York Higher Educ. Servs. Corp. (In re Raimondo),* 183 B.R. 677, 681 (Bankr.W.D.N.Y.1995); *Fox. v. Student Loan Markerting Ass'n) (In re Fox),* 189 B.R. 115, 117 (Bankr.N.D.Ohio 1995). *See also Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby),* 144 F.3d 433, 438–39 (6th Cir.1998) (where the Sixth Circuit relied only on the Court's equitable principal, not upon the language of the Code).

14. *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen),* 232 B.R. 127, 136 (8th Cir. BAP 1999) (stating that Congress intended Courts to adopt an all or nothing approach in determining the dischargeability of student loan debt).

15. Mo.Stat.Ann. § 513.430(5) (Supp.2000).

16. *Id.* at § 513.427.

17. 425 F.Supp. 205 (D.Mass.1977).

18. *Id.* at 207.

19. *See e.g. In re Huntebrinker,* 224 B.R. 405, 407 (Bankr.E.D.Mo.1997) (holding that while a Mercedes–Benz is generally considered to be a luxury automobile, in this case the retention of same was a reasonable expense).

20. *Id.*

21. *Collection Financial Standards* (last modified Oct. 1, 1999) >http://www.irs.ustreas.gov/prod/ind_info/coll_stds/index.html>.

22. *Id.*

23. *Collection Financial Standards* (last modified Oct. 1, 1999) >http://www.irs.ustreas.gov/prod/ind_info/coll_stds/cfs-trans.html>.

**532**

lowed for operating costs in the M.S.A. § for Kansas City, Missouri is $279.00 for the first car.[24] Thus, according to the IRS, a reasonable automobile allowance for a debtor living in this M.S.A. § is $670.00. Brown's testimony indicates that her automobile expenses are currently $473.00. She is well within the guidelines allowed by the IRS, and she is well within the guidelines that this Court finds reasonable.

I will not spend much time with the suggestions that Brown should relocate her mobile home in order to walk to work, or that she will not need a car if and when she retires. Brown's lot rent is only $206.00 a month. Her housing expenses are, thus, at a minimum and this Court will not require that she relocate. And, wherever she lives in this area after retirement, it is reasonable to expect that she will need a car. For all of the above reasons, I find that a debtor does not have to surrender her automobile in order to repay her student loan obligation.

In sum, I find that excepting this student loan debt from discharge would impose an undue hardship on the debtor. Therefore, the debt will be discharged. An Order in accordance with this Memorandum Opinion will be entered this date.