In re Judith Mae **WEGFEHRT**, Debtor.

Judith Mae **WEGFEHRT**, Plaintiff,

v.

**OHIO STUDENT LOAN COMMISSION**,

and

**The City Bank, Defendants.**

Bankruptcy No. 580–1966.
Adv. Proceeding No. 580–0519.

United States Bankruptcy Court, N. D. Ohio.

May 4, 1981.

---

John J. Murphy, Cleveland, Ohio, for debtor.

Timothy J. O'Neill, Youngstown, Ohio, David Stocker, Columbus, Ohio, for defendants.

## FINDING AS TO DISCHARGEABILITY OF A DEBT

H. F. WHITE, Bankruptcy Judge.

Judith Mae Wegfehrt, hereinafter referred to as debtor, filed a complaint for determination of the dischargeability of a student loan under 11 U.S.C. Section 523(a)(8) alleging that repayment of the student loan would impose an undue hardship on debtor and her dependents. The defendants, AmeriTrust Corporation, f. n. a. City Bank and Ohio Student Loan Commission, hereinafter referred to as Loan Commission, filed answers denying that excepting the student loan from discharge would impose an undue hardship on debtor and her dependents.

A trial on said matter was held on April 8, 1981 and the debtor and the Loan Commission were each represented by counsel. After considering the evidence and the testimony at the trial, this Court makes the following Finding of Fact and Conclusion of Law.

## FINDING OF FACT

1) The debtor is 36 years old, divorced, and has custody of her three children: a daughter, 16 years old; a son, 13 years old; and a son, 7 years old.

2) The debtor is employed at Cuyahoga Falls General Hospital as a licensed practical nurse. For the past year, debtor had a net income of Three Hundred Thirty Five Dollars ($335.00) bi-weekly. At the present time, debtor has a net income of Three Hundred Seventy Eight Dollars ($378.00) bi-weekly due to a recent cost-of-living raise. Plaintiff's Exhibit B.

3) From January 1, 1981 to the present time, the debtor has not received any child support payments from her ex-husband. Debtor's ex-husband, pursuant to their divorce decree entered on September 25, 1980, was ordered by the Domestic Relations Court of Portage County, Ohio, to pay to the debtor Seventy Five Dollars ($75.00) per week as and for the support of their three (3) children.

4) Debtor's ex-husband testified that he was unemployed for thirteen (13) months and is currently employed part-time nights as a dishwasher. Debtor's ex-husband further testified that he is presently receiving food stamps as he can not even support himself and therefore is unable to make the Seventy Five Dollars ($75.00) per week support payment.

5) The debtor's monthly living expenses for herself and her three children amount to approximately One Thousand Three Dollars ($1,003.00). The debtor's present monthly income amounts to approximately Eight Hundred Nineteen Dollars ($819.00). Thus, the debtor's monthly expenses exceed her monthly income by One Hundred Eighty Four Dollars ($184.00).

6) The debtor's average monthly expenses consist of the following items: Rental of four-bedroom home—Three Hundred Twenty Five Dollars ($325.00), Plaintiff's Exhibit C and Defendant's Exhibits E and F; Utilities—One Hundred Thirty Seven Dollars ($137.00) (includes gas heat—Fifty Dollars ($50.00), Plaintiff's Exhibit G; Electricity—Thirty Dollars ($30.00) Plaintiff's Exhibit H; Telephone—Twenty Five Dollars ($25.00), Plaintiff's Exhibit I; Water and Sewer—Twenty Five Dollars ($25.00); and Trash Removal—Seven Dollars ($7.00), Plaintiff's Exhibit J); Food—Two Hundred Sixteen Dollars ($216.00); Clothes and Shoes—Eighty Dollars ($80.00); Transportation—One Hundred Fifty Dollars ($150.00), Plaintiff's Exhibit D; Car Insurance—Thirty Dollars ($30.00); Hair Cuts, School Needs, and Miscellaneous—Forty Five Dollars ($45.00), Plaintiff's Exhibits E and F; and Medical and Dental—Twenty Dollars ($20.00), Plaintiff's Exhibit K.

7) The debtor is in good health except for a recurring inflammation in her right arm which causes numbness in her right hand. The debtor's children are in good health.

8) The debtor had two years of schooling at the Cuyahoga Falls School of Practical Nursing and graduated in September of 1978 as a licensed practical nurse. Prior to her graduation, debtor was hired by Cuyahoga Falls General Hospital and has worked at said hospital for approximately two and one half years.

9) The debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 16, 1980, listing liabilities of Four Hundred Five Thousand Six Hundred Thirty Six Dollars and Fifty Cents ($405,636.50) and assets of One Thousand Two Hundred Twenty Five Dollars ($1,225.00). Debtor's assets consist of household furniture, wearing apparel, and a 1969 Chevrolet Impala and are exempt under Ohio law. The Court finds that debtor's liabilities actually amount to Two Hundred Five Thousand Six Hundred Thirty Six Dollars and Fifty Cents ($205,636.50) as debtor owes Two Hundred Thousand Dollars ($200,000.00) to Rosemarie Montana Felder and Gregory Felder as the result of an automobile accident and J. C. Penny Insurance Company has subrogated to the Felder's rights. Therefore, debtor does not owe Two Hundred Thousand Dollars ($200,000.00) to the Felders and another Two Hundred Thousand Dollars ($200,000.00) to the insurance company as scheduled.

10) The unsecured claim in the amount of Two Hundred Thousand Dollars ($200,000.00) owing to Rosemarie Montana Felder and Gregory Felder and to J. C. Penny Insurance Company as subrogee, resulted from an automobile accident in 1977. Debtor admits she was at fault but believed she had insurance to cover the accident. Debtor's ex-husband took care of their insurance coverage and told debtor that she was covered and that the attorneys for their insurance company would defend the suit for her. Debtor's insurance had been cancelled due to nonpayment and a default judgment was entered against the debtor. To reopen the case would necessitate debtor to incur legal expenses and the debtor admits she was at fault.

11) The trustee of debtor's estate filed a no-asset report on January 29, 1981. This Court granted the debtor a discharge on April 7, 1981.

12) The student loan at issue herein was incurred by the debtor and her ex-husband, as co-maker, on September 27, 1977. The

loan was made by The City Bank and guaranteed by the Loan Commission. The principal amount of the loan was Two Thousand Dollars ($2,000.00) with an annual percentage rate of seven (7) percent. The monthly payment due was Thirty Four Dollars and Sixty Nine Cents ($34.69) with the first payment due December 30, 1979 and the last payment due November 30, 1985. Defendant's Exhibit B.

13) The debtor, from January 14, 1980 to November 24, 1980, made eleven (11) payments on said loan amounting to Three Hundred Eighty One Dollars and Fifty Nine Cents ($381.59). As of February 24, 1981, there was due to the Loan Commission the sum of One Thousand Eight Hundred Nineteen Dollars and Eighty Seven Cents ($1,819.87). Plaintiff's Exhibit A, Defendant's Exhibits C and D.

## ISSUE

Has the debtor met the tests of undue hardship, as provided for under 11 U.S.C. Section 523(a)(8)(B), so as to discharge her student loan obligation?

## DISCUSSION OF LAW

Student loans are excepted from discharge under 11 U.S.C. Section 523(a)(8),[1] until such loans have been due and owing for five (5) years or unless the debtor proves that excepting such loans from discharge will impose an undue hardship on the debtor and the debtor's dependents. The student loan at issue herein has not been due and owing for five (5) years before the date of the filing of debtor's petition. 11 U.S.C. Section 523(a)(8)(A). Debtor contends that her student loan obligation is dischargeable under 11 U.S.C. Section 523(a)(8)(B) as repayment of said loan would impose an undue hardship on debtor and her dependents.

The legislative history behind the student loan exception to discharge indicates that 11 U.S.C. Section 523(a)(8) was enacted in "response to rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of educational loan debts."[2] The Commission on the Bankruptcy Laws of the United States, established by Congress in 1970 to study the bankruptcy laws of the United States and to make recommendations for revision of the bankruptcy laws, in its report to Congress stated the following:

Examples of the abuse of the discharge in the case of educational loans have also come to the Commission's attention. Some individuals have financed their education and upon graduation have filed petitions under the Bankruptcy Act and obtained a discharge without any attempt to repay the educational loan and without the presence of any extenuating circumstance, such as illness. The Commission is of the opinion that not only is this reprehensible but that it poses a threat to the continuance of educational loan programs. The Commission, therefore, recommends that, in the absence of hardship, educational loans be nondischargeable unless the first payment falls due more than five (5) years prior to the petition.[3]

The Report of the Committee on the Judiciary, House of Representatives, described the purpose of the enactment of 11 U.S.C. Section 523(a)(8), as follows:

... a few serious abuses of the bankruptcy laws by debtors with large amounts of educational loans, few other debts, and well-paying jobs, who have filed bankruptcy shortly after leaving

---

**1.** 11 U.S.C. Section 523(a)(8) provides that: "A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless—(A) such loan first became due before five years before the date of the filing of the petition; or (B) excepting such debt from discharge under this paragraph will

impose an undue hardship on the debtor and the debtor's dependents;"

**2.** Commission on the Bankruptcy Laws of the United States.
Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No. 137, 93rd Cong., 1st Sess., Pt. II 140, n.14 (1973).

**3.** Id. at Pt. I, 176–77.

school and before any loans became due, have generated the movement for an exception to discharge.[4]

This Court is of the opinion that debtor herein is not guilty of the intentional abuse of bankruptcy laws which 11 U.S.C. Section 523(a)(8) was intended to bar. The amount of debtor's student loan obligation due and owing is approximately One Thousand Eight Hundred Nineteen Dollars and Eighty Seven Cents ($1,819.87). Debtor's student loan obligation makes up one percent (1%) of her total indebtedness. The percentage of the debtor's total indebtedness which is composed of student loans was considered to be an important factor by the Committee on the Judiciary, House of Representatives, in distinguishing between individuals who deliberately seek to dissolve their student loan obligations through abuse of the operation of the bankruptcy laws and those who have actually had financial problems. In its report, the Committee on the Judiciary stated that:

If under eighty percent (80%) of the debtor's debts were educational debts, then it is likely that the debtor has encountered financial difficulty after school, and that the bankruptcy is a result of a true need for bankruptcy relief rather than an abuse of the bankruptcy system.[5]

This Court finds that debtor herein filed a petition for relief under Chapter 7 of the Bankruptcy Code due to the default judgment rendered against her in the amount of Two Hundred Thousand Dollars ($200,-000.00), arising out of an automobile accident for which debtor was not insured. Debtor's motive in filing bankruptcy was not to dissolve her student loan obligation.

Student loan obligations may be discharged in bankruptcy if the debtor shows that repayment of the loan would impose an "undue hardship" on the debtor and his/her dependents. "Undue hardship" is not defined in the Bankruptcy Code. The Commission on the Bankruptcy Laws of the United States recommended to Congress that student loans "should not as a matter of policy be dischargeable before he (debtor) has demonstrated that for any reason he is unable to earn sufficient income to maintain himself and his dependents and to repay the educational debt."[6]

In order to determine whether the nondischargeability of the student loan would impose an "undue hardship" on the debtor, the Commission stated that:

... the rate and amount of his (debtor's) future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt.[7]

This Court is of the opinion that each bankruptcy case involving a student loan must be examined on the facts and circumstances surrounding that particular bankruptcy for the Court to make a determination as to "undue hardship." The bankruptcy court must determine whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living.

Debtor, herein, is currently netting Three Hundred Seventy Eight Dollars ($378.00), bi-weekly. Debtor is working as a licensed practical nurse, the highest position debtor qualifies for with her present level of education. To qualify for a more lucrative

---

4. H.R.Rep.No.595, 95th Cong., 1st Sess. 133 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6094.

5. Id.

6. Commission on the Bankruptcy Laws of the United States, supra at Pt. II, p. 140, n.15.

7. Id. at 140–41, n.17.

position, i. e. registered nurse, debtor would need further education. As a licensed practical nurse, debtor has a marketable skill, however, debtor, unlike a professional person, i. e. doctor, lawyer, is not expected to have her income increase substantially in the future.

Debtor has had no other source of income since January 1, 1981. Debtor, prior to January 1, 1981, had received child support payments from her ex-husband. Debtor's ex-husband testified that he was unemployed for thirteen (13) months and is currently employed part-time nights as a dishwasher. Debtor's ex-husband further testified that he is currently receiving food stamps as he can not even support himself. It is highly speculative, in the current economic conditions, as to when debtor's ex-husband will obtain and retain full-time employment and as to whether his income from said job will be sufficient to support himself and to make payments for the support of his children.

The Court finds that had debtor remained a housewife rather than getting an education in nursing, considering the circumstances, debtor and her children would be receiving some type of welfare aid and would be a burden on the community as a whole. Even with debtor's current job and the income therefrom, debtor may qualify for public assistance but is trying to support herself and her children on her own and has never applied for public assistance.

Debtor's monthly expenses for herself and her three (3) children exceed her monthly income by One Hundred Eighty Four Dollars ($184.00). This Court finds that debtor's monthly expenses (listed in Finding No. 6) are reasonable for an employed mother, age 36, a 16-year-old girl, a 13-year-old boy and a 7-year-old boy.[8]

This Court further finds that although debtor and her three (3) children could reside in a three-bedroom home or apartment, with the two boys sharing a bedroom, the rental of a four-bedroom is not excessive. It appears to this Court that monthly food expense of Two Hundred Sixteen Dollars ($216.00) set forth by debtor is a very conservative amount for food for one adult, two teen-agers and a 7-year-old boy.[9]

This Court finds that debtor's income is insufficient to support debtor and her three (3) children at a minimal standard of living in addition to funding repayment of the student loan. This Court finds that debtor did make payments on her student loan while she was receiving child support from her ex-husband. When debtor's ex-husband stopped making child support payments, debtor was unable to make payments on her student loan obligation without reducing what debtor and her children needed to live on.

Debtor has no excess expenditures such as club dues or car payments. This Court finds that debtor is doing the best she can to minimize her expenses and maximize her income.

It is the conclusion of this Court that debtor is not guilty of the intentional abuse of bankruptcy laws which 11 U.S.C. Section 523(a)(8) was intended to bar as debtor had

---

8. According to the United States Department of Labor, Bureau of Statistics, the total consumption of a lower budget for a 4-person family in the nonmetropolitan areas of North Central United States as of autumn (1980) was $10,998.00 annually or $916.50 monthly. The total consumption figure consists of the following expenses: food, housing, transportation, clothing, personal care, medical care, and other family consumption such as newspapers, recreation, and gifts. The 4-person family consists of an employed husband, a wife not employed outside the home, an 8-year old girl, and a 13-year old boy. Nonmetropolitan areas are defined as places with population of 2,500 to 50,000.

United States Department of Labor, Bureau of Statistics, Autumn 1980 Urban Family Budgets And Comparative Indexes For Selected Urban Areas, Table 1. Annual costs of a lower budget for a 4-person family, autumn 1980.

9. According to the United States Department of Labor, Bureau of Statistics the food cost of a lower budget for a 4-person family in the nonmetropolitan areas of North Central United States as of autumn 1980 was $4,116.00 annually ($3,620.00 for food at home and $496.00 for food away from home) for a monthly food cost of at least $301.67 to $343.00.

Id.

made payments on her student loan and her primary motive in filing bankruptcy was not to dissolve her student obligation. It is further the conclusion of this Court that to except the student loan from discharge would impose an "undue hardship" on debtor and her dependents as debtor's income is insufficient to enable debtor to repay her student loan obligation without reducing what debtor and her dependents need to live on. Therefore, debtor's student loan obligation owing to the Loan Commission will be discharged.