## In the Matter of Marc Philip RAPPAPORT, Debtor.

## Marc Philip RAPPAPORT, Plaintiff,

v.

## ORANGE SAVINGS BANK and New Jersey Higher Education Assistance Authority, Defendants.

### Bankruptcy No. 81–0147.

United States Bankruptcy Court,
D. New Jersey.

Nov. 10, 1981.

Allan L. Tumarkin, Livingston, N.J., for debtor/plaintiff.

Grey J. Dimenna, Deputy Atty. Gen., Trenton, N.J., for New Jersey Higher Ed. Assistance Authority.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

Plaintiff debtor Marc Philip Rappaport seeks a discharge of certain educational debts contracted as student educational loans guaranteed by the New Jersey Higher Education Assistance Authority (HEAA). The parties having stipulated to all material facts, the sole question of law presented deals with the dischargeability *vel non* of those debts. The facts (undisputed) are as follows:

1. On November 24, 1980, the debtor filed a voluntary Chapter 7 petition, in which he scheduled a total of $31,534.46 of unsecured debts, with the single largest debt resulting from a series of educational loans granted by Orange Savings Bank and guaranteed by HEAA totaling some $13,300, which loans were utilized for educational purposes at the New Jersey College of Medicine. These loans were satisfied by the guarantor, HEAA. The bank demands that the complaint be dismissed as against it.

2. While employed in West Orange, New Jersey, the debtor entered into a monthly payment plan with the bank. Following payment of a small portion of the total debt, payments were intermitted upon the debtor's entry to medical school at the American University of the Caribbean at Montserrat in the West Indies. The debtor, presently attending that school as a full time student, is otherwise unemployed.

*3.* The debtor, at present financially dependent upon his parents, is 27 years of age, appears to be in reasonably good health and to be making satisfactory progress in his medical studies at Montserrat, and will be attending that school for the next three years.

## DISCUSSION

11 U.S.C. § 523[a][8] provides:

A discharge under section 727, 1141 or 1328[b] of this title does not discharge an individual debtor from any debt for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

The Court notes preliminarily that since the debtor was dismissed from the New Jersey College of Medicine and Dentistry in May of 1979, and having filed his petition in November of 1980, subject loans clearly could not have become due five years before the filing of the petition. Under such circumstances, the exception to nondischargeability carved out in subsection A of 523[a][8] is inapplicable.

The sole issue remaining is whether the excepting of that debt from discharge will impose an undue hardship on the debtor. The operative words here are "undue hardship". Upon a reading of the legislative history behind the student loan exception to discharge encapsulated in § 523[a][8] of the Code, it is clear that Congress was primarily motivated by a desire to reform a surfacing rampant abuse of the discharge process in the area of educational loans, specifically the persistent attempts to avoid payment of those loans. *See* Report of the Commission

on the Bankruptcy Laws of the United States, H.R.Doc.No. 137, Pt. II, 93rd Cong., 1st Sess., 140 n. 14 (1973). "A few serious abuses of the bankruptcy laws by debtors with large amounts of educational loans, few other debts, and well-paying jobs, who have filed bankruptcy shortly after leaving school and before any loans became due, have generated the movement for an exception to discharge." H.R.Rep.No. 595, 95th Cong., 1st Sess., 133, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 6094.

Given the inherent vagueness of the phrase "undue hardship", the courts not unpredictably have taken to devising tests to aid in the appropriate determination. For example, in *In re Wegfehrt*, 10 B.R. 826, 830, CCH Bankr.L.Rptr.P. 68,057 (Bkrtcy.N.D.Ohio 1981), the court stated:

. . . . each bankruptcy case involving a student loan must be examined on the facts and circumstances surrounding that particular bankruptcy for the Court to make a determination as to "undue hardship." The bankruptcy court must determine whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living.

In the making of such determination, the *Wegfehrt* court suggests as an important consideration the relative proportion of the individual debtor's student loan obligations to total indebtedness, since "hardship" must be construed in the context of general debt. *See id.* at 830.

It is similarly clear that that Congress did not intend mere hardship, not even considerable hardship, to serve as the touchstone of discharge. "The generally accepted standard for determining the question of undue hardship is whether there are present such unique circumstances to render it less likely, or likely only with extreme difficulty or unlikely at all, that the bankrupt will within the foreseeable future be able to honor his commitment."

*In re Densmore*, 8 B.R. 308, 309, 7 B.C.D. 271, 3 C.B.C.2d 471 (Bkrtcy.N.D.Ga.1979). To say, as the *Densmore* court does, that there must be a showing of extraordinary circumstances, *id.*, still leaves undefined the nature and perimeters of those extraordinary circumstances.

Some bankruptcy judges have tried to gauge the "extraordinary circumstances" sufficient to warrant discharge by detailed comparison of the debtor's regular income and expenses; see, *e.g., In re Rice*, 13 B.R. 614, 615–16, 4 C.B.C.2d 1343, 1345 (Bkrtcy. D.S.D.1981). But for reasons developed *infra*, the Court deems such an approach unrealistic in the case *sub judice*, since debtor has no present income, nor does he envision or seek remuneration during the remainder of his tenure as a medical student. The salient feature here is the debtor's future earning potential as a medical doctor, not the fact of his present unemployment. Indeed, in *In re Warren*, 6 B.R. 233, 6 B.C.D. 1058, CCH Bankr.L.Rptr.P. 67,711 (Bkrtcy. S.D.Fla.1980), the court, considering the plight of an unmarried female in her early twenties, financially dependent upon her parents, expressly ruled that the mere unemployment of the debtor (who had studied music and had been professionally employed as a flutist, but had not yet received her degree in music and had no current prospects of permanent full-time employment) was insufficient to establish undue hardship as contemplated under § 523[a][8][B] of the Code. 6 B.R. at 234.

█ This Court is of the view that there does not exist in the instant matter any evidence of such a unique set of circumstances that denying debtor a discharge from subject debt will cause him to suffer any hardship other than the hardship all debtors suffer when required to pay just debts. *See In re Collier*, 8 B.R. 909 (Bkrtcy. S.D.Ohio 1981).

Prevailing decisional law makes it plain that "undue hardship" is generally associated with a total incapacity now and in the future to pay one's debts for reasons not within the control of the individual debtor.

Generally, undue hardship has only been found where exigent circumstances exist which impair the debtor's ability to repay the loans, such as where the debtor has recently been through a divorce, receives no income from her ex-husband, and supports two children, one of whom required extensive medical treatment, *In re MacPherson*, 4 B.C.D. 950 (W.D.Wis.1978); or, where the debtor and her husband lived on a net monthly income of $560, and had incurred a $4,000 medical debt because of severe medical problems encountered by the couple's young baby. *In re Bagley*, 4 B.R. 248, 6 B.C.D. 404 (Bkrtcy.D.Ariz. 1980). These are the types of extreme hardship to which the exception to section 439A of the Higher Education Act [predecessor to 11 U.S.C. § 523[a][8] with which it is substantially similar] was meant to apply.

To illustrate the impassable gulf between the instant case and the type of situation to which the "undue hardship" exception was intended to apply, the case of *In re Diaz*, 5 B.R. 253, 2 C.B.C.2d 501 (Bkrtcy.W.D.N.Y. 1980), wherein the court deemed the situation there "a classic hardship case", is instructive. There, the debtor was 45 years of age with four children dependent upon her to varying extent for financial sustenance, divorced, with her husband confined to a mental institution. In addition, her children suffered from medical, dental and other health disorders for which she was unable to pay for required treatment. Debtor's necessary weekly expenses exceeded her income, with little likelihood that debtor's financial position would improve dramatically in the foreseeable future. By way of contrast, the debtor here may look forward to a lucrative future as a physician. As noted in *In re White*, 6 B.R. 26, 28, 22 C.B.C. 989, CCH Bankr.L.Rptr.P. 67,535 (Bkrtcy.S.D.N.Y.1980):

The whole point is that this bankrupt cannot show "undue hardship" just because the start of her career has been delayed... "Undue hardship" means more than present difficulty in starting out. If that difficulty were to control, there would be no significance to the

five-year period within which the discharge is not so easily available [referring to Higher Education Act of 1965, § 439A, 20 U.S.C. § 1087–3 (repealed 1978)].

Here again, Congress' intent in excepting from discharge the debt of the bankrupt student educated at public expense in the expectation that such learning would enhance future productivity, *see* 6 B.R. at 28, proved the dispositive consideration.

The future earning potential of the individual debtor is a recurrent theme in similar cases invariably resulting in nondischargeability of subject debt where such potential exists, notwithstanding present temporary inconvenience. *In re Wegfehrt*, 10 B.R. at 830; *In re Bengal Trading Corp.*, 12 B.R. 693, 695 (Bkrtcy.S.D.Fla.1981); *In re Rice, supra*, 13 B.R. at 617, 4 C.B.C.2d at 1348; *In re Henry*, 4 B.R. 495, 497 (Bkrtcy.S.D.N.Y.1980); *In re Brock*, 4 B.R. 491, 494, 22 C.B.C. 775 (Bkrtcy.S.D.N.Y.1980); *In re White*, 6 B.R. at 29.

This Court feels obliged to observe that debtor had voluntarily entered into a repayment agreement and had, in fact, made a number of payments which ceased upon his entry into medical school in Montserrat. These events are not the result of circumstances beyond his control. *See In re Price*, 1 B.R. 768, 769 (Bkrtcy.D.Hawaii 1980), wherein the court, in denying the dischargeability of certain federally insured educational loan debts, ruled that any hardship to debtor and her family occasioned by her sending her children to private schools and incurring additional expenses, was brought about by her own volition.

Still other bankruptcy courts have held that one of the criteria to be considered in granting a discharge of a federally insured loan under the hardship provision of § 523[a][8][B] is whether a debtor has made a good-faith effort to negotiate deferment or forbearance of payment with a creditor. *In re Rice, supra*, 13 B.R. at 617, 4 C.B.C.2d at 1347; *In re Archie*, 7 B.R. 715, 719 (Bkrtcy.E.D.Va.1980). It does not appear that such effort has been made by the debtor here. Recognizing that debtor is not in a position to amortize the debt at this time,

HEAA has made it known that it is amenable to a flexible, deferred payment plan.

For all of the foregoing reasons, the subject debt is deemed nondischargeable. Submit an Order in accordance therewith.