In re Roberta Josephine CROWLEY, Debtor.

Roberta Josephine Crowley, Plaintiff,

v.

United States Department Of Education, Defendant.

Bankruptcy No. 00–30725.
Adversary No. 00–3041.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Feb. 22, 2001.

Harry D. Boul, Columbia, MO, for debtor/plaintiff.

Earl W. Brown, III, Springfield, MO, for defendant.

### MEMORANDUM OPINION
### AND ORDER

JERRY VENTERS, Bankruptcy Judge.

This case presents the question of whether a debtor's good faith efforts at repayment—or lack thereof—should be considered in determining the discharge of a student loan debt under the "undue hardship" provision of 11 U.S.C. § 523(a)(8).

On October 10, 2000, the Debtor in these proceedings, Roberta Josephine Crowley, filed a Complaint Seeking Hardship Discharge of Student Loan Under 11 U.S.C. § 523(a)(8) against the United States Department of Education. The Court held a hearing on this matter at the Jasper County Courthouse in Carthage, Missouri, on January 18, 2001. The Court took the matter under advisement.

Upon consideration of the facts and relevant law, the Court is now ready to rule.

For the reasons stated herein, the Court determines that the student loans owed by Roberta Josephine Crowley to the United States Department of Education are dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(8).

This Court has jurisdiction of this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding under § 157(b)(2)(I). This Memorandum Opinion and Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### FACTUAL BACKGROUND

The evidence in this case is largely undisputed. The Debtor, Roberta Josephine Crowley ("Roberta" or "Debtor"), obtained $7,500.00 in student loans from the United States Department of Education ("DOE") some time between 1982 and 1985. According to her testimony, the Debtor used the loans to pursue an associates degree in hotel and motel management at Crowder College in Neosho, Missouri. The Debtor has not made any payments on the loan and the outstanding balance is now approximately $22,384.00.

After obtaining her associates degree, the Debtor worked in catering management, earning approximately $18,000.00 a year, but she had to stop working after about three years when she severely injured herself on the job. According to her testimony, she slipped and fell on a wet floor, hitting her head and injuring her left knee, left elbow, head and neck. She collected a lump-sum payment from workers' compensation in the amount of $10,000.00 in 1988 as a result of her injuries, and was unable to work for approximately three years. She did not apply any portion of this settlement toward payment of her student loans.

Some time in 1995 or 1996, the Debtor, who was then working for Marriott food services in Tulsa, Oklahoma, once again slipped on a wet floor and injured herself. Additionally, around the same time, her boss physically assaulted her causing her 1988 injuries to resurface and worsen. As a result of her fall, she collected $2,500.00 from workers' compensation, and as a result of the physical assault, she received a $24,000.00 settlement from Marriott. Her share of that settlement, after attorney's fees and costs were deducted, was $10,000.00.

Shortly after she received the $10,000.00 from her settlement with Marriott, the Debtor made an "offer of settlement" to DOE. She testified that she called DOE (or its servicing agent) and offered to pay them the $10,000.00 in full satisfaction of her student loan indebtedness. Apparently, her balance at that time exceeded $10,000.00 and DOE refused her offer. The Debtor testified that she decided that if they wouldn't take $10,000.00 in full

satisfaction of her debt, she wouldn't pay them anything from the settlement.

Now, the Debtor is employed as a cafeteria worker at Crowder College, earning a net income of approximately $11,934.00 a year (equating to net income of approximately $1,193.00 a month for the ten months of the year in which the Debtor works).[1] According to her bankruptcy schedules she has total monthly expenses of $1,405.22. This figure includes $110.00 in transportation costs, $237.96 in auto loan payments, $48.80 in insurance and $137.46 in property tax (erroneously listed as a monthly expense rather than an annual expense) for a car she no longer owns, but does not include any expenses for a used pickup truck she recently purchased for fifty dollars. She has to commute approximately twenty miles to work every day and is currently borrowing a friend's vehicle until she can afford to make the necessary repairs on the pickup truck. So far, she has been unable to even afford to license the truck.

The Debtor is fifty-eight years old and has no dependents. She continues to have significant health problems, including numbness in her limbs, weakness, and a slight limp when she walks.

## DISCUSSION

■ Section 523(a)(8) of the Bankruptcy Code ("Code") provides that educational or student loans are excepted from the general discharge provisions of the Code "unless excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). It is uncontroverted that the student loans obtained by the Debtor while she was attending school are student loans that fall within the ambit of this provision.

The second prong of § 523(a)(8) calls for a determination of "undue hardship." Undue hardship, however, is not defined in the Code. Consequently, bankruptcy courts have been forced to develop working definitions of undue hardship to determine whether the particular facts of a case warrant the discharge of the student loan debt. A number of tests have been developed over the last two decades to be used in determining whether undue hardship exists, but the tests have some significant differences.

■ Three main approaches or tests have emerged from the case law interpreting undue hardship, although because of the intensive nature of the inquiry, each court inevitably puts it own "spin" on a test.[2] The first approach originated from *Pennsylvania Higher Educ. Assistance Agency v. Johnson* (*In re Johnson*), 5 B.C.D. 532 (Bankr.E.D.Pa.1979). The "*Johnson* test" has three prongs: (1) a mechanical analysis of the debtor's past and probable future resources; (2) a consideration of the debtor's good faith, in-

---

1. At trial, a number of figures and methods of calculating Roberta's average monthly income were suggested. The Court has settled on the following calculation. The pay stub submitted into evidence shows that Roberta makes $550.79 in net income on a bi-weekly basis. Therefore, to come up with her yearly income we multiplied $550.79 by the number of pay periods in a year (26), for a total of $14,320.54. We then divided that number by 12 to arrive at a an approximate monthly income of $1,193.38. Because the evidence was that Roberta only works ten months out of the year, we multiplied that number by 10, resulting in an estimate of her total net income at $11,933.78 a year. The Court recognizes that Roberta's actual monthly income probably varies somewhat from our calcula-

tions because the $550.79 figure includes holiday pay but does not include overtime pay. However, based on the evidence available, this approximation is more than adequate for our undue hardship analysis.

2. While most cases use one of the three tests with more or less variation, some courts have adopted completely different tests. *See, e.g., Bryant v. Pennsylvania Higher Educ. Assistance Agency* (*In re Bryant*), 72 B.R. 913, 916–17 (Bankr.E.D.Pa.1987) (using a primarily objective test which determines hardship based on the Federal poverty guidelines, unless the debtor can prove extraordinary circumstances meriting discharge in spite of a lack of poverty).

cluding the debtor's best efforts to repay the loan and minimize expenses; and (3) a policy analysis of the debtor's motives in filing bankruptcy, including whether the debtor derived financial benefits from the education received by virtue of the loans. *Id.*

■ The second approach has its roots in *Brunner v. New York State Higher Educ. Serv. Corp. (In re Brunner)*, 831 F.2d 395, 396 (2nd Cir.1987). The *Brunner* test, which appears to be a variation of the *Johnson* test, also considers three factors: (1) whether the debtor can maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans; (2) whether the debtor's current state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) whether the debtor has made a good faith effort to repay the loans. *Id.*

■ The third approach forgoes the structure of the *Brunner* and *Johnson* tests for a more flexible "totality of the circumstances" test. *See Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127 (8th Cir. BAP 1981); *see also, Moorman v. Kentucky Higher Educ. Assistance Auth. (In re Moorman )*, 44 B.R. 135, 137–38 (Bankr. W.D.Ky.1984); *D'Ettore v. Devry Inst. of Tech. (In re D'Ettore )*, 106 B.R. 715, 718 (Bankr.M.D.Fla.1989); *Coleman v. Higher Educ. Assistance Found. (In re Coleman )*, 98 B.R. 443, 451 (Bankr.S.D.Ind.1989); *Ford v. Tennessee Student Assistance Corp. (In re Ford )*, 151 B.R. 135, 138–40 (Bankr.M.D.Tenn.1993); *Evans v. Higher Educ. Assistance Found. (In re Evans )*, 131 B.R. 372, 375–76 (Bankr.S.D.Ohio 1991). In the words of one proponent, this test "affords a determination that contextually considers both the debtor's situation and the policies underlying § 523(a)(8)…and ensures an appropriate, equitable balance [between] concern for cases involving extreme abuse and concern for the overall fresh start policy." *Law v.*

*Educ. Res. Inst. Inc. (In re Law )*, 159 B.R. 287, 292–93 (Bankr.D.S.D.1993).

In *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen )*, 232 B.R. 127 (8th Cir. BAP 1981) (*"Andresen "*), the Bankruptcy Appellate Panel for the Eighth Circuit discussed these various tests for undue hardship at length and concluded that, based on the Eighth Circuit Court of Appeals' decision in *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews )*, 661 F.2d 702 (8th Cir.1981) (*"Andrews "*)—the only Eighth Circuit case addressing the issue then and now—the totality of the circumstances test is the controlling test in this jurisdiction. The BAP concluded so not because the Court of Appeals explicitly rejected or adopted any particular test, but rather by inference from the analysis used by the *Andrews* court.

As explained in *Andresen,* the *Andrews* court relied heavily on the recommendations to Congress made by the Commission on the Bankruptcy Laws of the United States when § 523(a)(8) was enacted and the opinion of the bankruptcy court in *In re Wegfehrt,* 10 B.R. 826 (Bankr. N.D.Ohio 1981), in developing its approach to the undue hardship standard. The court relied on the Commission's recommendation that student loans "should not as a matter of policy be dischargeable before (the debtor) has demonstrated that for any reason he (or she) is unable to earn sufficient income to maintain himself (or herself) and his (or her) dependents and to repay the educational debt." *Andrews,* 661 F.2d at 703. Further quoting the Commission (and *Wegfehrt* ), the *Andrews* court stated:

> … the rate and amount of (the debtor's) future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into ac-

count. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and (the debtor's) dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt.

*Andrews*, 661 F.2d at 703 (citing [3] Comm'n on the Bankruptcy Laws of the United States, Report, H.R. Doc. No. 93–137, 93 Cong., 1st Sess. (1973)(hereinafter Commission Report)).

Finally, quoting from *Wegfehrt*, the *Andrews* court summed up its approach, stating:

> [E]ach bankruptcy case involving a student loan must be examined on the facts and circumstances surrounding a particular bankruptcy for the Court to make a determination as to "undue hardship." The bankruptcy court must determine whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living.

*Id.* (citing *In re Wegfehrt*, 10 B.R. 826, 830 (Bankr.N.D.Ohio 1981)).

■ From these statements in *Andrews*, the BAP in *Andresen* concluded that the totality of circumstances test for undue hardship is binding in the Eighth Circuit, and more specifically, the BAP stated that the analysis for undue hardship requires a consideration of (1) the debtor's past, present, and reasonably reliable future financial resources; (2) calculation of the debtor's and his dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding the particular bankruptcy case. *Andresen*, 232 B.R. at 139. This Court, as well as many other bankruptcy courts in this jurisdiction, accept the test for undue hardship implicitly endorsed in

*Andrews* and explicitly enunciated in *Andresen* as binding in the Eighth Circuit. *See, e.g., In re Randall*, 255 B.R. 570 (Bankr.D.N.D.2000); *In re Perry*, 239 B.R. 801 (Bankr.W.D.Ark.1999); *In re Powers*, 235 B.R. 894 (Bankr.W.D.Mo.1999).

The *Andrews/Andresen* approach has not eliminated all ambiguity from the undue hardship inquiry, though. The third prong of the test, which instructs the court to examine any other relevant facts surrounding the particular bankruptcy case, requires a bit of fine tuning, as has become apparent from the facts of this case.

■ As we discuss below, the Court is convinced that, based on the first and second prongs of the totality of the circumstances test, Crowley has demonstrated an undue hardship. The creditor, DOE, however, has suggested that even if the Court finds that the Debtor has the current and prospective inability to pay, the Court should nevertheless find Crowley's student loan nondischargeable because she has failed to make a good faith effort to repay her loan. The undue hardship test in the *Andrews/Andresen* test does not specifically include the debtor's good faith efforts (or lack thereof) to repay student loans, though, in contrast to the *Brunner* and *Johnson* tests. Therefore, the Court must determine whether the third prong of the *Andrews/Andresen* test includes a consideration of the debtor's past, good faith efforts to repay the loan. For the reasons stated below, we conclude that it does not.

Courts that have considered the debtor's past, good faith efforts at repayment have generally done so in an apparent effort to effectuate certain policies voiced in the legislative history of 11 U.S.C. § 523(a)(8).

> Some courts, following the lead of *In re Johnson* ... have required a showing of "good faith" prior to discharge. There is no specific authority for this

**3.** *Andrews* cited *Wegfehrt*, which in turn cited the Commission Report. *See Andrews*, 661

F.2d at 703 (citing *Wegfehrt*, 10 B.R. at 830).

requirement, but the need for some showing of this type may be inferred from comments of the Commission Report. In discussing the discharge of loans after five years, when a showing of undue hardship is no longer required, the Commission noted that such discharge is fair because the debtor may be unable to repay his or her debts due to "factors beyond his reasonable control." [Commission] Report, *supra*, at 140 n. 16. If external circumstances were seen as justifying discharge after five years, it is likely that only such circumstances should be permitted to justify discharge prior to that time. The propriety of a requirement of good faith is further emphasized by the stated purpose for § 523(a)(8): to forestall students, who frequently have a large excess of liabilities over assets solely because of their student loans, from abusing the bankruptcy system to shed these loans. *Id.* at 140, n. 14. Thus it is proper to require a debtor to show that he or she has made good faith efforts to repay the loan and that the forces preventing repayment are truly beyond his or her reasonable control.

*Brunner v. New York State Higher Education Services Corporation, (In re Brunner)* 46 B.R. 752 at 755–56 (S.D.N.Y.1985) (citing *Rappaport v. Orange Sav. Bank (In re Rappaport)*, 16 B.R. 615, 617 (Bankr. D.N.J.1981)).

At least one court critical of the good faith inquiry contends that the good faith inquiry only applied when a debtor was seeking a discharge under the provision of former § 523(a)(8), which provided for "automatic" discharge of student loans after five years (extended to seven years in 1990, and abolished entirely in 1998). *See*

*Kopf v. United States Department of Educ. (In re Kopf)*, 245 B.R. 731, 741 (Bankr.D.Me.2000). *See also, In re Bryant*, 72 B.R. at 915 (noting its dissatisfaction with the "unbridled subjectivity" at work in the good faith element in *Brunner*'s undue hardship analysis).

Regardless of whether the legislative history supports the consideration of the debtor's past good faith efforts to repay in determining undue hardship, though, such a consideration is not supported in the plain language of the statute; in fact, we find that the express language of the statute actually precludes such a consideration.[4]

When the plain language of a statute conflicts with the legislative history, the statute will prevail, unless a literal application of the statute would thwart the statute's obvious purpose, *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982), or would produce an absurd result, *United States v. American Trucking Ass'ns.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940). *See also, Arnold v. United Parcel Service, Inc.*, 136 F.3d 854, 857–58 (1st Cir.1998); *Parisi by Cooney v. Chater*, 69 F.3d 614, 617 (1st Cir.1995); *Midway Indus. Contractors, Inc. v. Ameron Protective Coatings, A Division of Ameron, Inc.*, 184 B.R. 551, 555 (Bankr. N.D.Ill.1995). "[B]asic general principles of statutory construction must yield to *clear contrary evidence* of legislative intent." *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) (emphasis added).

In this instance, however, there is no conflict between the plain language of the statute and the legislative history because

---

4. The Court also questions the correctness of judicially imposing the good faith requirement in the statute under the five / seven year provision, although the issue is moot in light of the 1998 amendment of 11 U.S.C. § 523(a)(8). The plain language of the statute is clear, and by its terms § 523(a)(8) imposes no such requirement. It is not the court's

prerogative to arbitrarily impose a good faith requirement where none exists, especially in view of the fact that nondischargeability provisions are to be narrowly construed. *Green Tree Fin. Corp. v. Beasley (In re Beasley )*, 202 B.R. 979, 983 (Bankr.W.D.Mo.1996)(citing *In re Wheatley*, 158 B.R. 140, 143 (Bankr. W.D.Mo.1993)).

there is no clear, contrary evidence of legislative intent; the legislative history does not specifically address whether a debtor's good faith efforts at repayment should be considered in a determination of undue hardship, and what potentially relevant inferences can be drawn from the legislative history may no longer be applicable in light of the 1998 amendment of § 523(a)(8) abolishing § 523(a)(8)(A). Furthermore, the plain language of the statute, as interpreted by the court, is not at odds with the statute's obvious purpose.

Section 523(a)(8) provides, in pertinent part, that a student loan will not be discharged in bankruptcy unless "excepting such debt from discharge . . . *will impose an undue hardship on the debtor and the debtor's dependents.*" The first italicized phrase, "will impose," unambiguously indicates that the focus of the inquiry is with the *future* impact of excepting the debt from discharge. Therefore, however the admittedly ambiguous concept of undue hardship is defined, it must be defined in such a way that makes sense in the context of the statute's unambiguous directive that the consideration be prospective. A consideration of the debtor's *past* behavior would not make sense in the evaluation of the debt's *future* impact on the debtor— the impact will be the same whether or not the debtor made good faith efforts to repay the debt.

The second italicized phrase indicates that courts must consider the impact of excepting the debt not only on the debtor, but must consider its impact on "the debtor's dependents" as well. If the statute is concerned with the impact on the debtor's dependents, basing a determination of undue hardship on the debtor's past conduct would be illogical and inconsistent with the statute. It is hard to imagine that Congress would have specifically included the debtor's dependents in the statute if it

intended courts to consider a debtor's past conduct in their consideration of undue hardship. To do so would be, in effect, visiting the sins of the father (or mother) upon the children—a result contrary to the letter of the statute and the spirit of the law. A more plausible interpretation of undue hardship would be one that only considered factors relevant to the debtor's current and future situation.

■ This interpretation also better harmonizes with the overall structure and principles underlying § 523 as well as the entire Bankruptcy Code. The fundamental principle driving the bankruptcy system and Code is that honest but unfortunate debtors deserve a fresh start (*i.e.,* a discharge). And, as a general policy, the Bankruptcy Code doesn't concern itself with how a debtor came to be in the financial position that made bankruptcy necessary. While some debtors resort to bankruptcy because of what might be considered more "noble" reasons, such as sickness, injury or other circumstances beyond their control, other debtors seek bankruptcy protection for less noble reasons such as poor money-management skills or a lack of fiscal discipline and restraint. Although it sounds contradictory, for purposes of the discharge, the latter category of debtors is still considered honest but unfortunate. Therefore, in order to be denied a discharge, a debtor must be dishonest and "not" unfortunate to the extent set forth in § 523 (and § 727).

■ The exceptions to discharge listed in § 523(a) represent Congress' choice to make certain debts harder or impossible to discharge.[5] Most of the exceptions to discharge are based on the past conduct of the debtor. *See, e.g.,* 11 U.S.C. § 523(a)(2), (4), (6), (9), (10) and (12).[6]

---

5. Sections 523(a)(8) and (15) are the only provisions which only make a debt *harder* to discharge rather than *impossible* to discharge.

6. In addition to these subsections of § 523(a) which explicitly implicate a debtor's past conduct, other subsections, which appear to except a debt from discharge because of its "nature," implicate the debtor's past conduct

Those exceptions to discharge identify the kind of past conduct that removes the debtor from the ranks of the "honest and unfortunate," such as fraud (§ 523(a)(2)) or willful and malicious injury (§ 523(a)(6)). However, the other exceptions to discharge, notably § 523(a)(5), (8) and (15) except debts from discharge based on the nature of the debt, and for those debts (at least § 523(a)(8) and (15)), the statutes provide limited "exceptions" to the exceptions from discharge. Undue hardship is the exception applicable to § 523(a)(8).

Viewed within this scheme, the undue hardship exception in § 523(a)(8) (as well as the exception in § 523(a)(15)) stands out in contrast to those provisions in § 523(a) that identify past conduct as the reason for excepting a debt from discharge. If Congress had intended a bankruptcy court to base its determination of dischargeability of a student loan debt on the debtor's past conduct (specifically, the failure to make a good faith effort at repayment), it could have said so, as it did in other subsections of § 523(a). Instead, as discussed above, Congress explicitly indicated that the inquiry was to be prospective (*"will impose an undue hardship"*), even though it did not define exactly what that inquiry would entail (thus, the ambiguity of undue hardship). Furthermore, if Congress had wanted to impose a straightforward requirement of good faith, it also could have done so, as it did in 11 U.S.C. § 1325(a)(3).

Therefore, for the reasons discussed above, we hold that a debtor's good faith efforts at repayment should not be included in the Court's consideration of "any other relevant facts surrounding the particular bankruptcy case" for purposes of determining undue hardship under 11 U.S.C. § 523(a)(8).

Having determined that, we now turn to an analysis of (1) the Debtor's past, present, and reasonably reliable future financial resources, (2) an assessment of her necessary reasonable living expenses and (3) other unique circumstances in this particular case.

*1. The Debtor's current and future financial resources*

As noted above, at the time of the dischargeability hearing, the Debtor had a current net income of $1,193.00 a month. The Debtor testified that she had just received a raise (from $6.00 to $8.00 an hour) and, in light of her recent raise and physical limitations, that it is unlikely that she will receive another raise any time soon or qualify for any promotions. Based on the Court's consideration of the evidence and our observation of the Debtor, we agree that the Debtor has most likely reached the height of her earning potential.

*2. The Debtor's necessary reasonable living expenses*

The Debtor's expenses listed in Schedule J were:

| | |
|---|---|
| Rent | $300.00 |
| Electricity and heating fuel | $ 86.00 |
| Telephone | $ 40.00 |
| Household Supplies | $ 60.00 |
| Food | $250.00 |
| Laundry and Dry Cleaning | $ 25.00 |
| Transportation (not including car payments) | $110.00 |
| Recreation, clubs, entertainment, etc. | $ 60.00 |
| Auto Insurance | $ 48.80 |
| Personal Property Tax | $137.46 |
| Installment Payments: Auto | $237.96 |
| Vacation, Birthdays holiday | $ 50.00 |
| **TOTAL MONTHLY EXPENSES** | 1405.22 |

by inference. For example, 11 U.S.C. § 523(a)(7) excepts from discharge debts for "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit ... imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition." Al-

though the statute appears to speak to the nature of this debt, the underlying policy at work here is to ensure that a debtor cannot use bankruptcy to escape the punishment imposed as a result of his or her wrongful past conduct.

Aside from the Debtor's improper listing of personal property tax as a monthly (rather than an annual) expense, it would be hard to argue persuasively that these living expenses are unreasonable or unnecessary. They are even more reasonable in view of the Debtor's health problems and the notable absence of any expenses for medicines, treatments or physical therapy. Therefore, adjusting for the personal property tax, the Debtor's total monthly expenses equal $1,279.22 ($1405.22 − $137.46 + ($137.46/12)), yielding a monthly net deficiency of $87.22.

DOE contends, however, that further adjustments must be made to the Debtor's auto expenses because she no longer owns the car that gave rise to the expenses listed on her Schedule J. To the extent that the Debtor's immediate expenses may have decreased, DOE is correct; the Debtor's current expense might be such that a small amount of money would be available for the repayment of her student loans. However, the Court's analysis of the Debtor's necessary reasonable expenses is not limited to only those listed on the Debtor's Schedules; some estimation of the Debtor's future expenses is also appropriate. *See In re Williams*, 233 B.R. 423, 427 (Bankr.W.D.Mo.1999).

Even though the Debtor's current auto and transportation expenses have been reduced because her car was repossessed, it is more than likely that this decrease is only temporary. The Debtor testified that although she is currently able to borrow a car to commute to and from work, she will not be able to do so indefinitely, nor would the Court expect her to. At some point in the near future, the Debtor will need either to repair the pickup truck she purchased for $50.00 or to buy another vehicle. Either way, her auto expenses, and thus her total monthly expenses, will return to somewhere near the scheduled levels.

### 3. Other unique circumstances in this particular case

As discussed above, the Debtor's past efforts at repayment will not be considered as an "other unique circumstance." The only unique circumstance that the Court will consider is the Debtor's physical health, and that factor weighs heavily in favor of a finding of undue hardship.

The Court does not purport to have medical expertise, but our observation of the Debtor confirms her testimony that her physical impairment is significant and her pain constant. In view of the age of her injury and the Debtor's age, it is unlikely that her condition will improve greatly. The consequence of her physical impairment will be to create a greater strain on her financial situation by reducing her earning power and/or increasing her medical expenses.

### CONCLUSION

After consideration of all of the evidence in this case, the Court finds and concludes that it would work an undue hardship on the Debtor to except the Debtor's student loan, now having a balance of over $22,000.00, from discharge. The Court is convinced that the Debtor is unlikely to obtain employment in the future that will increase her income and make it possible for her to make any payment on her student loan debt. The Debtor's income is equal to or slightly below her expenses, and the Court has determined that her expenses are reasonable and necessary. Although the creditor presented evidence that might cast doubt on whether the Debtor made a good faith effort at repayment of the student loan debt, based on our examination of 11 U.S.C. § 523(a)(8) and the applicable case law in this jurisdiction, we have concluded that that evidence should not be considered in our determination of undue hardship. The Court did find, however, that the Debtor's illness should be considered as a unique factor in this case, and that that factor weighs in favor of finding undue hardship.

Therefore, for the reasons stated herein, it is

**ORDERED** that the Debtor, Roberta Josephine Crowley, be and is hereby granted a discharge from the educational loan owed to the United States Department of Education, in the present approximate amount of $22,384.00.

**SO ORDERED.**